**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, Petitioner,**

v.

**Stephanie McMILLAN and Tracy D. McMillan, Respondents.**

**No. 94SC714.**

Supreme Court of Colorado, En Banc.

Oct. 28, 1996.

Rodman & Ross–Shannon, John R. Rodman, David L. Murphy, Denver, for Petitioner.

Long & Long, P.C., Martin E. Long, Denver, for Respondents.

Justice SCOTT delivered the Opinion of the Court.

Pursuant to our order granting certiorari in *State Farm Mutual Automobile Insurance Co. v. McMillan*, 900 P.2d 1243 (Colo. App.1994), we must decide two questions:

1. Whether the court of appeals erred in concluding that C.R.C.P 60(b)(5) may be used as a mechanism for obtaining relief from a final judgment due to a change in case law precedent; and

2. Whether the court of appeals erred in concluding that gunshot injuries sustained during a traffic altercation were "caused by accident" and, therefore, subject to uninsured motorist coverage.

We answer the first question in the negative because we agree with the court of appeals that, under the procedural record of this case, the trial court did not abuse its discretion under C.R.C.P. 60(b)(5) when it granted plaintiffs' motion for relief from its earlier judgment. Moreover, because the result below is not inconsistent with our decision in *Cung La v. State Farm Automobile Insurance Co.*, 830 P.2d 1007 (Colo.1992), and because we find the term "caused by accident" under the State Farm insurance policy to be ambiguous and thus construe it in favor of the insured, i.e., to protect the insured from the acts of others, both negligent and intentional, we also answer the second question in the negative. Accordingly, we affirm the judgment of the court of appeals.

I

A

The facts of this case are not in dispute and are derived from the pleadings and the trial court's order granting the McMillans' motion for summary judgment. During the evening of September 30, 1989, Stephanie McMillan was driving herself and her husband, Tracy McMillan, home after attending a wedding. En route to their home, the McMillans had an altercation with the driver of another vehicle, Dimitri Marc Lacey. The altercation began when Lacey started tailgating the McMillans and flashing his headlights. In response, Stephanie McMillan slowed down and pumped her brakes, attempting unsuccessfully to get Lacey to drive around her car. As they approached a stoplight, Lacey pulled alongside the McMillans' car and he and the passenger in his car exchanged words with Tracy McMillan. The verbal altercation then ended and Stephanie McMillan proceeded to drive away. Lacey chased the McMillans and later pulled alongside their car, aimed, and fired a shot from a semi-automatic handgun into the car. After passing their car, Lacey fired again, this time shooting through the front windshield and striking Stephanie McMillan in the mouth. As a result, Stephanie McMillan suffered serious injuries due to the bullet fired by Lacey while driving his vehicle.[1] There was no

---

1. On March 1, 1991, in a separate proceeding, a default judgment was entered against Lacey. In that case, the trial court found that Lacey intended to make harmful contact with the McMillans, in particular, Stephanie McMillan, by firing from his vehicle a .32 caliber semi-automatic handgun

collision or other contact between the two vehicles.

## B

The McMillans were named insureds under their State Farm Mutual Automobile Insurance Company (State Farm) policy. Under the terms of that policy, State Farm promised to pay the McMillans for bodily injury caused by the driver of an uninsured motor vehicle, provided the injury was "caused by accident arising out of the operation ... or use of an uninsured motor vehicle."

Stephanie McMillan filed claims for payment under both her State Farm policy and the policy insuring Lacey's vehicle, a policy issued by Farmers Insurance Company (Farmers). Farmers denied her claims, asserting that Lacey's act of shooting at the McMillans was intentional and therefore excluded from coverage under its policy. Stephanie McMillan thus sought recovery under the uninsured driver provisions of her State Farm policy.

State Farm, assuming that its policy did not cover such claims, filed this declaratory judgment action naming the McMillans as defendants and seeking a determination that it owed no obligation to make payments to Stephanie McMillan for gunshot injuries sustained during the traffic altercation.[2] After the McMillans answered the complaint, State Farm filed a motion for summary judgment, claiming the shooting did not arise out of the operation, maintenance, or use of a motor vehicle and therefore was not covered under the terms of the policy.[3]

On March 28, 1991, the trial court entered an order reserving its ruling on State Farm's motion for summary judgment until after the court of appeals decided *State Farm Automobile Insurance Co. v. Cung La*, 819 P.2d 537 (Colo.App.1991).[4] The trial court stated: "It has come to the court's attention that a case with very similar issues was argued before the Court of Appeals on [February 25, 1991]. Therefore, the court will wait to rule on this issue to see if the appellate court provides any guidance on how to handle this matter."[5]

On April 4, 1991, State Farm submitted to the trial court a copy of the court of appeals' opinion in *Cung La*, dated March 28, 1991. In its filing, State Farm asserted that *Cung La* "is controlling authority for the case at bar." The trial court's May 15, 1991, order stated "[a]s anticipated, the case of *Cung La* announced ... by the Colorado Court of Appeals, is dispositive. Under *Cung La*, [the McMillans'] injuries did not 'arise out of the use or operation of a motor vehicle.'" Thus, based solely on the court of appeals' decision in *Cung La*, the trial court granted State Farm's motion for summary judgment.

The McMillans did not appeal. However, in *Cung La*, the party-insureds sought review of the court of appeals' judgment and we granted certiorari in that case. Although they did not file an appeal, the McMillans filed a notice with the trial court informing it and State Farm that we had granted certiorari in *Cung La*. State Farm did not object or otherwise respond to the McMillans' notice of our consideration of *Cung La*.

in the direction of Stephanie McMillan while she was driving her car.

**2.** The McMillans answered the complaint and asserted counterclaims under the State Farm Insurance policy. However, during the course of the proceedings below, the McMillans and State Farm, by stipulation, dismissed all claims except those related to whether State Farm was obligated to make payments pursuant to the uninsured motorist provisions of the McMillans' policy.

**3.** State Farm's uninsured motorist provision provides in pertinent part: "We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused

by accident *arising out of the operation, maintenance or use of an uninsured motor vehicle."* (Emphasis added.)

**4.** State Farm was a party in *Cung La*. *Cung La* involved uninsured motorist coverage for an intentional shooting, a matter of first impression before our appellate court.

**5.** Although the record before us is unclear as to how *Cung La* was initially brought to the court's attention, during oral arguments respondents indicated that State Farm, also a party in *Cung La*, brought the case to the trial court's attention. In any event, neither party objected to the trial court's reliance upon *Cung La* as controlling the outcome of this case.

On May 26, 1992, we reversed the judgment of the court of appeals in *Cung La v. State Farm Auto. Ins. Co.*, 830 P.2d 1007, 1008 (Colo.1992). As a result, on June 29, 1992, the McMillans filed a motion for relief from summary judgment, notifying the trial court that the court of appeals' holding in *Cung La* was reversed. State Farm opposed that motion.

On January 12, 1993, the trial court, pursuant to C.R.C.P. 60(b)(4) & (5), granted the McMillans' motion for relief from judgment and set aside its May 15, 1991, order granting summary judgment for State Farm. The court's ruling stated:

> This court, relying on [*Cung La*] granted Plaintiff's Motion for Summary Judgment. The Court of Appeals decision was reversed by the Colorado Supreme Court on May 26, 1992. At all times, Respondent kept this court informed and advised as to the status of *Cung La*, which the Court determined was dispositive of the Motion for Summary Judgment.

In response, State Farm filed a motion to amend its petition for declaratory relief to include an allegation that Stephanie McMillan was not entitled to uninsured motorist benefits because her injuries "were not caused by an accident" under the terms of the State Farm policy.[6] Despite the McMillans' opposition, the trial court granted State Farm's motion. After State Farm's amendment of its complaint, both parties filed cross motions for summary judgment based on the new allegation. State Farm, in its second supplemental disclosure certificate and motion for summary judgment, stated that its petition for declaratory judgment "arises out of a drive-by shooting" of Stephanie McMillan. The trial court entered judgment in favor of the McMillans and ordered State Farm to make uninsured motorist benefit payments under the McMillans' policy.

On appeal, the court of appeals affirmed the trial court's order setting aside judgment for State Farm. *State Farm Mut. Auto. Ins. Co. v. McMillan*, 900 P.2d 1243, 1245 (Colo.

App.1994). The court of appeals concluded that "the trial court, and for that matter the parties, intended to rely on a correct statement of the applicable law. Timing alone dictated an incorrect result. Thus, it was appropriate that the trial court review its initial summary judgment order and take appropriate action." *Id.* at 1246. In addition, the court of appeals concluded that because an accident should be viewed from the standpoint of the insured, *id.* at 1248, Stephanie McMillan's injuries were "caused by accident" and therefore covered under her State Farm policy. We agree.

## II

As a preliminary matter, we address the trial court's ruling setting aside the May 1991 summary judgment order.

C.R.C.P. 60(b) provides relief from judgment under certain conditions. The Rule provides in relevant part:

> **Rule 60. Relief from Judgment or Order**
>
> . . . .
>
> **(b) Mistakes; Inadvertence; Surprise; Excusable Neglect; Fraud; etc.** On motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for the following reasons: ... (4) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) *any other reason justifying relief from the operation of the judgment.* The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than six months after the judgment, order, or proceeding was entered or taken.

(Emphasis added.)

### A

■ The force of C.R.C.P. 60(b) is to grant a trial court which has rendered judgment

---

6. State Farm's uninsured motorist provision provides in pertinent part: "We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be *caused by accident* arising out of the operation, maintenance or use of an uninsured motor vehicle." (Emphasis added.)

the ability to reconsider and, if appropriate, to change its ruling "when [a] significant new matter of fact or law arises which is extrinsic to it because of not having been presented to the court." *E.B. Jones Constr. v. City & County of Denver,* 717 P.2d 1009, 1013 (Colo. App.1986).

Similar authority is found in the federal rules of civil procedure, establishing that, under appropriate circumstances, a change in relevant case law warrants relief from a federal trial court order under the federal analog to our Rule 60(b)(5), Fed.R.Civ.P. 60(b)(6).[7] *Adams v. Merrill Lynch Pierce Fenner & Smith,* 888 F.2d 696, 702 (10th Cir.1989) (a change in relevant case law by the Supreme Court warrants relief under Fed.R.Civ.P. 60(b)(6)); *Pierce v. Cook & Co.,* 518 F.2d 720, 722–24 (10th Cir.1975), *cert. denied,* 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976); *Professional Assets Management, Inc. v. Penn Square Bank, N.A.,* 616 F.Supp. 1418, 1419–20 (W.D.Okla.1985). *But cf. Collins v. Wichita,* 254 F.2d 837, 839 (10th Cir.1958) (change in law caused by Supreme Court decision in another case involving different parties is "not such an extraordinary circumstance which justifies such relief" under Fed.R.Civ.P. 60(b)(6)).

"C.R.C.P. 60(b), like its counterpart in the Federal Rules of Civil Procedure, 'attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done.'" *Canton Oil Corp.,* 731 P.2d at 694 (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2851, at 140 (1973)). To achieve this balance, the rule provides in clause 60(b)(5) that trial courts may set aside a judgment for *"any other reason justifying relief from the operation of the judgment."* C.R.C.P. 60(b)(5) (emphasis added). *See generally* 5 Robert M. Hardaway & Sheila K. Hyatt, *Colorado Civil Rules Annotated,* at 169–72 (2d ed. 1985).

In *Klapprott v. United States,* the Supreme Court noted that "[i]n simple English, the language of the 'other reason' clause, for all reasons except [those] particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." 335 U.S. 601, 614–15, 69 S.Ct. 384, 390, 93 L.Ed. 266, *modified,* 336 U.S. 942, 69 S.Ct. 384, 93 L.Ed. 1099 (1949); *see also Canton Oil,* 731 P.2d at 694. Read too broadly, however, the "other reason" clause could create a great deal of uncertainty concerning the validity of judgments. *Canton Oil,* 731 P.2d at 694. For that reason, we have narrowly interpreted the clause to avoid unduly undercutting judgments, and have insisted that it be reserved only for "extraordinary circumstances" and "extreme situations." *Id.; Atlas Constr. Co. v. District Court,* 197 Colo. 66, 69, 589 P.2d 953, 956 (1979).

"The grant or denial of a C.R.C.P. 60(b) motion lies within the sound discretion of the trial court and, absent abuse of that discretion, will not be disturbed on appeal." *E.B. Jones Constr.,* 717 P.2d at 1013–14; *Front Range Partners v. Hyland Hills,* 706 P.2d 1279, 1281 (Colo.1985); *Columbine Valley Constr. Co. v. Board of Directors,* 626 P.2d 686, 696 (Colo.1981); *see also Pacific Mut. Life Ins. Co. v. First RepublicBank Corp.,* 997 F.2d 39, 49 (5th Cir.1993) (Rule 60 provides courts with authority to vacate judgments whenever such action is appropriate to accomplish justice); *Wilson v. Al McCord, Inc.,* 858 F.2d 1469, 1478 (10th Cir.1988) (appellate review of district court's ruling on a motion for relief under Rule 60(b)(6) is on an abuse of discretion standard, and absent such abuse of discretion, the district court's determination should not be disturbed); *Pierce v. Cook & Co.,* 518 F.2d 720, 722 (10th Cir.1975) (rule should be construed liberally when substantial justice will be served); *Radack v. Norwegian America Line Agency, Inc.,* 318 F.2d 538, 542 (2d Cir.1963) (Rule 60

---

7. Federal Rule of Civil Procedure 60(b) differs in some minor respects from C.R.C.P. 60(b). For instance, the federal rule enumerates "newly discovered evidence" as a ground for relief, while Colorado does not. For that reason, the federal court's "other reason" clause is 60(b)(6), whereas in Colorado it is 60(b)(5). Also, the time limits for relief under 60(b)(1) and (2) in Colorado are not more than six months after judgment, whereas the federal rule limits relief to not more than one year after judgment. *See Canton Oil Corp. v. District Court,* 731 P.2d 687, 694 n. 6 (Colo.1987).

gives the district court a "grand reservoir" of equitable power to do justice in a particular case).

## B

■ The instant case is inextricably bound, both substantively and procedurally, to a case the parties agree is controlling and in which State Farm is also a party; therefore, we hold that, in light of the course of events and procedural posture of this case, an "extraordinary circumstance" existed permitting the trial court to grant C.R.C.P. 60(b)(5) relief from judgment.

■ It is undisputed that, pursuant to stipulation of the parties, *Cung La* formed the sole legal basis for the trial court's ruling and its grant of summary judgment in favor of State Farm. Far from being decided outside the time frame of the instant case, *Cung La* was litigated and appeals prosecuted concurrently with the case at bar. Both *Cung La* and the instant case involve identical provisions of State Farm insurance policies, specifically the uninsured motorist provisions. Not only was State Farm a party in *Cung La* during both the trial and appellate proceedings, but it also agreed that *Cung La* was "controlling authority." Consequently, the trial court, at the behest of the parties, tied the outcome of this case to the law established on appeal in *Cung La*.[8] Given these facts, the trial court's C.R.C.P. 60(b)(5) grant of relief to the McMillans was justified and, in light of State Farm's agreement that *Cung La* was controlling, the result did not prejudice State Farm.

■ In essence, we hold that, under circumstances such as these, where (1) a trial court is considering a question of law of first impression; (2) the same issue is concurrently set for determination on appeal and all

parties agree the law of the concurrent case is dispositive; and (3) there is no prejudice to either party, a trial court may timely reconsider a ruling previously issued in a case before it. Such a determination, therefore, is left to the sound discretion of the trial court.

## C

■ We recognize the conflicting, yet compelling interests in both equity and the finality of judgments. Although the existence of facts peculiar to the instant case effect an extraordinary circumstance warranting 60(b)(5) relief, our holding today does not diminish our commitment to the finality of judgments. The invocation of C.R.C.P. 60(b)(5), in reliance upon our judgment today, demands that trial courts continue to give scrupulous consideration to our strong policies favoring the finality of judgments. *E.B. Jones Constr.*, 717 P.2d at 1013. We acknowledge that C.R.C.P. 60(b)(5) is not a substitute for appeal, but rather is meant to provide relief in the interest of justice where extraordinary circumstances exist. *Cavanaugh v. State Dep't of Social Servs.*, 644 P.2d 1, 5 (Colo.1982); *E.B. Jones Constr.*, 717 P.2d at 1013.

Citing *Cavanaugh*, State Farm argues that our adherence to the finality of judgments precludes relief from judgment when parties fail to file a timely appeal. *Cavanaugh*, 644 P.2d at 5. We reject petitioner's efforts to posture the instant case as one solely involving a failure to appeal. In *Cavanaugh*, we refused relief under C.R.C.P. 60 because of appellant's inability to perfect appellate jurisdiction by timely proceeding under C.R.C.P. 60(b)(1). *Id.* at 5.[9] There, we found that neither appellant nor her counsel diligently pursued a motion to extend the time for filing a post-trial motion, or to secure a rul-

---

8. Although, at the time *Cung La* was brought to the attention of the trial court by the parties, the case was pending before the court of appeals, it would be beyond contemplation that the parties intended only to be bound by the judgment of the court of appeals in light of the ability of either party in that case to petition for certiorari. Thus, by agreeing to be bound by the *law* of that case, the parties necessarily agreed to be so bound even though that law eventually may be decided on our later review.

9. The court also noted appellant's declaration in a letter addressed to the Governor of Colorado, copies of which were sent to news media throughout the State of Colorado, which stated, "I realize that I have a right of appeal to the Colorado Supreme Court. I will not give this mockery of justice any recognition by entering an appeal." *Cavanaugh*, 644 P.2d at 5 n. 7.

ing on that motion before the six-month time period for filing had run. *Id.* In *Cavanaugh*, we upheld the district court's refusal in that case to accept the appellant's collateral attack on its judgment in reliance upon C.R.C.P. 60(b)(5). Consistent with Cavanaugh's failure "to diligently proceed" to sustain a claim of clerical error under C.R.C.P. 60(a), we affirmed the trial court's ruling denying relief from judgment for "any other reason." *Id.* More than ten months after the challenged judgment and after becoming aware that no motion for extension of time had actually been filed with the court, the appellant did not take any action. *Id.*

■ In contrast, the McMillans immediately advised the trial court, without objection by State Farm, of our grant of certiorari to review *Cung La* and filed their motion for relief from summary judgment less than one month after our reversal of the court of appeals' judgment in *Cung La*. Therefore, they filed their motion within the time frame contemplated by C.R.C.P. 60(b). Far from lacking due diligence, as the trial court remarked and the record here supports, the McMillans kept the court and the parties adequately informed regarding the status of *Cung La* on appeal. It was the law of *Cung La* that State Farm agreed was dispositive. Thus, we reject State Farm's argument based on *Cavanaugh* and determine that the trial court was not precluded from granting the relief requested under C.R.C.P. 60(b)(5). Because of our holding under C.R.C.P. 60(b)(5), we need not and do not address arguments raised under C.R.C.P. 60(b)(4).

### III

■ In light of our resolution of the first question, we now must decide whether damages sustained from a gunshot wound, which occurred during an altercation while driving on public streets, constitutes an injury "caused by accident" under the State Farm insurance policy. State Farm argues that wounds sustained from an intentional shooting are not injuries "caused by accident" within the meaning of the McMillans' insur-

ance contract. Specifically, State Farm contends that the claimed injury must be the result of the negligence of an uninsured motorist, as opposed to intentional acts. We disagree.

### A

■ State Farm's insurance agreement provides in relevant part:

> We will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured motor vehicle**. The **bodily injury** must be caused by accident, arising out of the operation, maintenance or use of an **uninsured motor vehicle**.

The policy itself neither limits coverage to negligent, as opposed to intentional, acts nor defines "accident." Nevertheless, section 10–4–609, 4A C.R.S. (1996 Supp.), regulates the insurance coverage for injuries caused by uninsured motorists and therefore governs the terms of the insurance contract. That statute states in relevant part:

> **10–4–609. Insurance protection against uninsured motorists—applicability.** (1)(a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided therein ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles....

§ 10–4–609.[10]

Section 42–7–413(1)(c), 17 C.R.S. (1996 Supp.), "which provides the minimum level of coverage required for an automobile insurance liability policy," *Cung La*, 830 P.2d at 1010, reflects identical considerations. It requires that the liability insurance "shall insure every [insured] person on account of the

---

**10.** Section 10–4–609 was amended in 1995; however, those changes are irrelevant to our inquiry.

maintenance, use, or operation of the motor vehicle ...." § 42–7–413(1)(c).

■ The plain language of neither section 10–4–609 nor section 42–7–413(1)(c) limits coverage to injuries "caused by accident." Furthermore, neither statute references the term "accident" or "accidental causes," or draws a distinction between negligent and intentional acts. State Farm argues that the phrase "caused by accident" is not ambiguous because either an event is an accident or it is not. However, State Farm does not possess the unilateral authority to define policy terms that contravene the minimum coverage available to insureds under our statutes. Because the "caused by accident" language in the State Farm policy is not defined in the applicable statutes, and because the provision cannot contravene the minimum levels of coverage required in both sections 10–4–609 and 42–7–413(1)(c), it is, at best, ambiguous.

■ If there are ambiguities in the insurance policy, those ambiguities must be construed against its drafter. *See State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 166 (Colo.1993). Thus, we must construe the ambiguous phrase "caused by accident" in favor of the insureds, the McMillans. *See id.* By construing the meaning of "accident" in favor of the insureds, we adopt the view of a majority of jurisdictions that the determination of whether an "accident" has occurred should be viewed from the standpoint of the insured. *See Milwaukee Mut. Ins. Co. v. Butler*, 615 F.Supp. 491, 495 (S.D.Ind.1985) (construing Indiana law); *Leatherby Ins. Co. v. Willoughby*, 315 So.2d 553, 554 (Fla.Dist.Ct.App.1975); *Ganiron v. Hawaii Ins. Guar. Ass'n*, 69 Haw. 432, 744 P.2d 1210, 1212 (1987); *Country Cos. v. Bourbon*, 122 Ill.App.3d 1061, 78 Ill.Dec. 407, 411, 462 N.E.2d 526, 530 (1984); *Redden v. Doe*, 357 So.2d 632, 634 (La.Ct.App.1978); *Davis v. State Farm Mut. Auto. Ins. Co.*, 264 Or. 547, 507 P.2d 9, 10 (1973) (construing Michigan Law); *Sciascia v. American Ins. Co.*, 183 N.J.Super. 352, 443 A.2d 1118, 1121 (Law Div.1982), *aff'd*, 189 N.J.Super. 236, 459 A.2d 1198 (1983); *General Accident Ins. Co. of America v. Olivier*, 574 A.2d 1240, 1242 (R.I.1990). *But cf. Wilson v. State Farm Mut. Auto. Ins. Co.*, 451 N.W.2d 216, 218 (Minn.Ct.App.1990) (occurrence is to be viewed from the perspective of the tortfeasor for purposes of determining if the occurrence constitutes an "accident" within uninsured motorist coverage); *McCarthy v. Motor Vehicle Accident Indemnif. Corp.*, 16 A.D.2d 35, 224 N.Y.S.2d 909, 917, *aff'd*, 12 N.Y.2d 922, 238 N.Y.S.2d 101, 188 N.E.2d 405 (1963) (holding that the argument that an occurrence should be looked at from the standpoint of the victim rather than the wrongdoer should be addressed to the legislature); *Roller v. Stonewall Ins. Co.*, 115 Wash.2d 679, 801 P.2d 207, 210 (1990) (rejecting the view adopted by some jurisdictions that whether an intentional act is an accident should be viewed from the perspective of the insured); *see also* 2 Irvin E. Schermer, *Automobile Liability Insurance: No–Fault Insurance, Uninsured Motorists, Compulsory Coverage* § 24.03, at 24–29 to 24–31 (rev.2d ed. 1994).

■ We find the reasons for viewing the incident from a victim's standpoint as expressed in *Celina Mutual Ins. Co. v. Saylor*, 35 Ohio Misc. 81, 83–84, 301 N.E.2d 721, 723 (1973) compelling. There, the court stated:

[W]e deal with the subject of uninsured motorists coverage. The [insureds] have paid the insurance premiums and have consciously contracted with the [insurer] for protection. The intent in the mind of the insured at the time of injury should determine whether the acts are accidental or intentional. To look through the eyes of the uninsured rather than the insured in this factual situation would require an unconscionable twisting of the obvious purpose of purchasing insurance coverage.

All reason and logic would require a construction and interpretation that intent of mind should be taken from the viewpoint of the insured. Since the insured in the instant case was clearly not acting intentionally to warn herself, since the [insured] in the instant case was the party privy to the insurance contract; since the [insured] herein is the party who paid the premium for coverage to protect herself from the risk of injury caused by an uninsured third person it is the court's belief that the provisions of the insurance policy

must be construed most favorably from the insured's viewpoint.

*Id.* 301 N.E.2d at 723.[11] Hence, we reject State Farm's "objective viewpoint" and view this incident from the standpoint of a victim. Clearly, she did not expect or intend that the act of driving her car would result in her becoming the victim of a "drive-by shooting," as characterized by State Farm.

State Farm nevertheless relies on *Roller v. Stonewall Insurance Co.*, 115 Wash.2d 679, 801 P.2d 207 (1990), for its argument that an injury caused by intentional conduct by the tortfeasor is not "caused by accident" under the terms of the policy. However, in *State Farm Mutual Automobile Insurance Co. v. Nissen*, 851 P.2d 165 (Colo. 1993), the intentional conduct of the uninsured tortfeasor did not preclude our holding that uninsured motorist coverage existed for

the insured.[12] Therefore, we conclude that Stephanie McMillan's injuries were "caused by accident" as set forth in the State Farm policy and, thus, are within the policy's coverage.

### B

State Farm also argues that a question of fact remains whether the attack upon the McMillans was a result of their own conduct or of provocation. State Farm argues that, as the trial court noted, Tracy McMillan and Lacey were engaged in a verbal altercation prior to the shooting, and Ms. McMillan's testimony revealed that she pumped her brakes, slowed her car, and even stopped at one time, believing Lacey's flashing lights were intended as a warning of a problem with her car.

**11.** One well-known treatise, *Uninsured and Underinsured Motorist Insurance*, notes four cogent reasons for examining whether the injuries were "caused by accident" from the viewpoint of the insured:

*First* ... unless the tortious conduct of the uninsured or unidentified motorist was provoked by the injured person, the events and the injuries resulting from intentional acts are indistinguishable from those that result from negligent acts. In other words, when injuries are viewed from the vantage point of an injured person, the cause of the injuries is no less fortuitous than the situation in which a person is injured as a result of the negligent operation of an uninsured vehicle.

*Second*, since uninsured motorist insurance is a first party coverage, the insurance provides no benefits—directly or indirectly—to the tortfeasor. Indeed, if the tortfeasor is financially responsible, the insurer which has paid uninsured motorist insurance benefits may seek reimbursement for payments made to a claimant. Therefore, the claim for indemnification under uninsured motorist insurance is readily distinguished from situations involving a question about whether liability insurance covers claims for damages that result from intentional torts.

*Third*, the justifications for not indemnifying the insured who intentionally commits a tortious act relate to deterrence or punishment: considerations that do not apply to the payment of first party, uninsured motorist insurance claims. Uninsured motorist insurance benefits paid to an injured person do not reduce the possibility that the tort system or the criminal law system will operate either (a) to punish the tortfeasor or (b) to influence the conduct of the tortfeasor who caused the loss

which is indemnified by the insurance or of other potential tortfeasors.

*Fourth*, the enactment of uninsured motorist insurance statutes throughout the country, which mandate either that the insurance be offered to all motor vehicle insurance purchasers or included in all motor vehicle insurance policies, reflects the importance attached to providing indemnification for innocent traffic victims who are injured by financially irresponsible or unidentified motorists.

1 Alan I. Widdis, *Uninsured and Underinsured Motorists Insurance*, § 10.2, at 512–13 (2d ed. 1992) (footnote omitted).

**12.** We also note that application of State Farm's theory of uninsured motorist coverage would lead to absurd and unintended results. State Farm's argument is that only negligent, as opposed to intentional, acts of a tortfeasor are covered under the policy. During oral argument, State Farm conceded that in accordance with its position, if the car driven by an insured was struck by the car of an uninsured motorist who deliberately ignored a traffic signal and drove through a stop sign, the insured would not be covered under the policy because the resulting collision would not be an "accident." We cannot countenance such an unreasonable result. As stated above, the plain language of the policy did not limit coverage to only negligent acts of an uninsured motorist. Moreover, the plain language of section 42–7–413(1)(c), 17 C.R.S. (1996 Supp.), requires that liability insurance "shall insure every [insured] person on account of the maintenance, use, or operation of the motor vehicle...." Thus, we conclude that the uninsured motorist provision of the State Farm policy at issue here covers the acts of an uninsured motorist, whether they be negligent or intentional.

However, the trial court's findings, not questioned on review, call for a different conclusion. In its order, the trial court held that the altercation between the McMillans and Lacey ended before the McMillans proceeded through the stoplight and prior to the shooting of Stephanie McMillan. The trial court stated: "The verbal altercation ended and Stephanie McMillan proceeded to drive away with [Lacey] a short distance behind." Thus, it was after the altercation ended that Lacey continued to follow the McMillans and shot Stephanie McMillan. Therefore, on this record, we reject State Farm's argument and refuse to hold that the McMillans' conduct warranted the shooting of Stephanie McMillan.

## IV

In sum, the unique facts and procedural posture of this case give rise to an "extraordinary circumstance" that justifies the district court's exercise of its discretion in granting C.R.C.P. 60(b)(5) relief. And, consistent with our precedent, we find that, when viewed from the victim's standpoint, Stephanie McMillan's injuries were "caused by accident" within the meaning of, and were therefore covered by, the automobile insurance policy issued by State Farm.

Accordingly, we affirm the judgment of the court of appeals.

VOLLACK, C.J., dissents.

Chief Justice VOLLACK dissenting:

The majority holds that the trial court did not abuse its discretion when it invoked C.R.C.P. 60(b)(5) to relieve the McMillans of a prior judgment based upon our decision in *Cung La v. State Farm Automobile Insurance Co.*, 830 P.2d 1007 (Colo.1992). The majority also holds that Stephanie McMillan, a motorist who was intentionally shot by another motorist, may recover for her injuries under the provisions of her uninsured motorist coverage. I dissent because I believe that the McMillans were not entitled to relief under C.R.C.P. 60(b)(5). Furthermore, I dissent because I disagree with the holding in *Cung La* and believe that injuries stemming from an intentional shooting are not covered by an injured motorist's uninsured motorist policy.

## I.

The majority decision sufficiently sets forth the facts of this case. C.R.C.P. 60(b) provides in part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) any other reason justifying relief from the operation of the judgment.

In addressing the application of C.R.C.P. 60(b)(5), we have explained:

> Rule 60 also contains a residuary clause which allows relief from judgment for "any other reason justifying relief from the operation of the judgment," in addition to those specifically enumerated in other subsections of the rule. *However, even the expansive "any other reason" language has been narrowly interpreted so as to avoid undercutting the preferred rule of finality of judgments. Rule 60 is not a substitute for appeal, but instead is meant to provide relief in the interests of justice in extraordinary circumstances.*

*Cavanaugh v. State Dep't of Social Servs.*, 644 P.2d 1, 5 (Colo.1982) (citations omitted and emphasis added). For this reason, C.R.C.P. 60(b)(5) has been construed narrowly and is to be applied only in "extraordinary circumstances" and "extreme situations." *Cavanaugh*, 644 P.2d at 5; *Canton Oil Corp. v. District Court*, 731 P.2d 687, 694 (Colo. 1987). As these cases suggest, C.R.C.P. 60(b)(5) is an emergency measure used to vacate judgments upon the happening of some unforeseen event that suddenly renders enforcement of a judgment unfair.

Extraordinary circumstances under C.R.C.P. 60(b)(5) include only those rare situations where new facts or information come to light that cast serious doubt on the fairness of a prior judgment. *See Canton Oil*, 731 P.2d at 694 (holding that grievous jury misconduct raising sensitive issues of religion is an extraordinary circumstance); *Southeastern Colorado Water Conservancy Dist. v. O'Neill*, 817 P.2d 500 (Colo.1991) (adopting

C.R.C.P. 59(d)(4) three-part test to weigh newly discovered evidence under C.R.C.P. 60(b)(5)).

Courts have been reluctant to apply C.R.C.P. 60(b)(5) and Fed.R.Civ.P. 60(b)(6),[1] its federal counterpart, to recognize and remedy judgments cast into doubt by subsequent changes in the law because the law is presumed to be in a constant state of revision and change. *See E.B. Jones Constr. Co. v. City and County of Denver,* 717 P.2d 1009, 1013 (Colo.App.1986) (stating that erroneous application of law does not give rise to extraordinary circumstances under C.R.C.P. 60(b)(5)); *Elgin Nat'l Watch Co. v. Barrett,* 213 F.2d 776 (5th Cir.1954) (holding that subsequent change in law does not render prior judgment invalid under Fed.R.Civ.P. 60(b)(6)).

Finally, the failure to timely file an appeal is not a sufficient ground to justify extraordinary relief from judgment under C.R.C.P. 60(b)(5) and Fed.R.Civ.P. 60(b)(6). *Ackermann v. United States,* 340 U.S. 193, 197–98, 71 S.Ct. 209, 211–12, 95 L.Ed. 207 (1950); *Cavanaugh,* 644 P.2d at 5.

In my view, the trial court abused its discretion when it used C.R.C.P. 60(b)(5) to vacate its prior judgment. The McMillans never appealed the trial court's order, but instead chose to await our decision in *Cung La* before taking further action. While the McMillans' inaction may have been convenient, it does not represent the type of extraordinary circumstances that C.R.C.P. 60(b)(5) is designed to remedy. *See Ackermann v. United States,* 340 U.S. at 198, 71 S.Ct. at 211–12 (holding that knowing failure to appeal is not excused by Fed.R.Civ.P. 60(b)(6) even though companion case was appealed successfully).

Our decision in *Cung La* did not represent an unexpected event that suddenly rendered the trial court's original order unfair. On the contrary, the McMillans were well aware of this court's grant of certiorari in *Cung La,* alerted the trial court of this fact, and waited for more than a year until we announced our decision. The McMillans knew and expected that an event would occur that might affect the trial court's ruling. In short, the McMillans improperly used C.R.C.P. 60(b)(5) as a substitute for filing an appeal. *See Cavanaugh,* 644 P.2d at 5.

Under its three-part holding, the majority states that if a trial court is faced with a matter of first impression and both parties agree that a concurrent case set for appeal is dispositive, "a trial court may timely reconsider a ruling previously issued in a case before it." Maj. op. at 791. On the contrary, a trial court has no authority to reconsider a prior ruling after it has entered a final judgment. The McMillans should have appealed to preserve their rights. Additionally, the notice alerting the trial court of our grant of certiorari in *Cung La* is not a proper pleading to reopen jurisdiction in the trial court to reconsider its original entry of final judgment.

Once the trial court entered a final order, the McMillans were obligated to appeal within forty-five days as required by C.A.R. 4(a). While I recognize the awkward timing this case posed in relation to *Cung La,* I refuse to read C.R.C.P. 60(b)(5) loosely to excuse the McMillans' procedural neglect when they were fully aware of our pending decision in *Cung La.* I therefore believe that the McMillans' C.R.C.P. 60(b)(5) motion should have been dismissed.

### II.

Although I believe that the McMillans' cause of action should be dismissed, I am compelled to reiterate the dissent articulated by Chief Justice Rovira, which I joined, in *Cung La,* 830 P.2d at 1013–19 (Rovira, C.J., dissenting). In my view, injuries caused by a gunshot fired from one car towards another are not sufficiently causally related to the operation of an automobile to permit coverage under the McMillans' uninsured motorist coverage. *See Cung La,* 830 P.2d at 1016–19 (Rovira, C.J., dissenting). Accordingly, I dissent.

---

1.   Federal Rule of Civil Procedure 60(b)(6) is substantially the same as C.R.C.P. 60(b)(5). *See* maj. op. at 790 n.7.