Gaynell DYER, Individually and as Administratrix of the Estate of Joe Dyer, Appellants,

v.

PROVIDIAN AUTO & HOME INSURANCE COMPANY, A Division of World Wide Insurance Company, Appellee.

No. 2005–CA–002236–MR.

Court of Appeals of Kentucky.

April 6, 2007.

Discretionary Review Denied by Supreme Court Feb. 13, 2008.

Sam H. Whitehead, Lexington, KY, for appellants.

David S. Strite, Michael R. McDonner, Louisville, KY, for appellee.

Before LAMBERT and STUMBO, Judges; BUCKINGHAM,[1] Senior Judge.

*OPINION*

STUMBO, Judge.

Gaynell Dyer, individually and as the administratrix of the estate of Joe Dyer, appeals from a summary judgment of the Knott Circuit Court in her action to recover uninsured motorist benefits from Providian Auto & Home Insurance Company. Her husband, Joe Dyer, died shortly after his vehicle was struck by a vehicle owned by B & H Coal Company and driven by an intoxicated employee. Gaynell Dyer maintains that genuine issues of material fact remain on the question of whether the tortfeasor was uninsured for purposes of the uninsured motorist statute, KRS 304.20–020. For the reasons stated below, we find no basis for tampering with the summary judgment and accordingly affirm.

On November 27, 1998, Joe Dyer (hereinafter "Joe") died in an automobile accident in Knott County, Kentucky. At the

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

time of the accident, the Dyers were insured by an automobile policy issued by Providian Auto & Home Insurance Company. As required by statute, the policy provided uninsured motorist ("UM") benefits. The policy covered three vehicles with UM benefits of $25,000 each or "stacked" coverage of $75,000.

The at-fault vehicle involved in the accident was owned by B & H Coal Company ("B & H") and was driven by B & H employee Thomas Conley. Conley was intoxicated at the time of the accident and had no personal automobile liability insurance. B & H was insured by a policy issued by Hartford Casualty Insurance Company ("Hartford"). The record contains testimony that Conley routinely drove the vehicle for personal use. At the time of the accident, he was driving the vehicle to his home.

After the accident, Gaynell Dyer (hereinafter "Gaynell"), individually and as executrix, filed an action in Knott Circuit Court against Conley, B & H and its board of directors and corporate officers alleging various theories of liability including negligence, negligent hiring and negligent supervision. Claims also were asserted against various insurance carriers including Hartford, Fidelity & Casualty Company of New York, CNA Insurance and Marine Office of America Corporation. Hartford subsequently sought a declaration of rights in an action filed in United States District Court on the issue of whether Conley was a permissive—and therefore insured—user of the vehicle owned by B & H. Ultimately, the Knott Circuit Court action was settled and Gaynell and her counsel received a lump sum payment in conjunction with a payout over a number of years. The settlement agreement expressly excluded the waiver of any

claims against Providian. Hartford's declaratory action was dismissed without a judicial determination of the issues raised.

Gaynell then filed an action against Providian in United States District Court alleging Providian's bad faith failure to pay UM benefits arising from Conley's alleged status as an uninsured driver. After that action was dismissed, she filed the instant action in Knott Circuit Court again alleging that Providian improperly failed to pay UM benefits.[2] After discovery, Gaynell filed a motion for summary judgment which was denied. Providian later filed a motion for summary judgment alleging that there was no genuine issue on the question of whether Conley was an insured driver and that it was entitled to a judgment as a matter of law. On October 4, 2005, the trial court rendered an order granting the motion. As a basis for the summary judgment, the court found that Gaynell "was ultimately fruitful in ascertaining the existence of a liability policy applicable to the offending vehicle." Gaynell's motion to alter, amend or vacate the summary judgment was denied, and this appeal followed.

■ Gaynell now raises several claims of error arising from the circuit court's entry of summary judgment in favor of Providian. She argues that the receipt of a collateral payment (i.e., the settlement payout) is irrelevant for purposes of ascertaining her entitlement to UM benefits under Providian's policy. She maintains that she was not ultimately fruitful in finding the existence of a liability policy applicable to B & H's vehicle, and argues that she has a reasonable expectation of UM coverage entitling her to benefits. Gaynell also relies on statutory and contractual language in support of her claim of entitle-

---

**2.** The Complaint alleged coverage of "UIM" or "underinsured motorist" benefits, but the matter was prosecuted as a "UM" or "uninsured motorist" claim.

ment to UM coverage, and argues that summary judgment was improper. In sum, she seeks an order reversing the summary judgment and holding that she is entitled to UM coverage as a matter of law. In the alternative, she seeks an order reversing and remanding for further adjudication of the claims presented.

Having heard the oral arguments and closely examined the record and the law, we find no error in the circuit court's entry of summary judgment. Though Gaynell raises several issues, the focus of her claim of error centers on the following question: does her acceptance of a settlement payout from Hartford preclude her recovery under Providian's uninsured motorist policy, notwithstanding Hartford's continued denial of coverage? This appears to be an issue of first impression in Kentucky, and is one which we must answer in the affirmative.

KRS 304.20–020 states,

(1) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles....

(2) For the purpose of this coverage the term *"uninsured motor vehicle" shall,* subject to the terms and conditions of such coverage, be deemed to *include* an insured motor vehicle where

the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency; an insured motor vehicle with respect to which the amounts provided, under the bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such motor vehicle, are less than the limits described in KRS 304.39–110; and *an insured motor vehicle to the extent that the amounts provided in the liability coverage applicable at the time of the accident is denied by the insurer writing the same.* (Emphasis added).

Because Hartford denied coverage in writing, KRS 304.20–020(2) would at first blush appear to require a finding that the vehicle operated by Conley was uninsured.[3] The statutory language, however, does not address the effect, if any, of the insurer's subsequent payment of funds to the injured party either coupled with an admission of liability or, as in the matter at bar, a continuing denial of coverage.

"[T]he purpose of mandatory uninsured motorist coverage is to provide those who purchased liability insurance with the same protection that they would have if the uninsured motorist had carried the minimum limits of liability coverage." *Burton v. Farm Bureau Insurance Company,* 116 S.W.3d 475, 480 (Ky.2003), quoting *Preferred Risk Mutual Insurance Company v. Oliver,* 551 S.W.2d 574 (Ky. 1977). That is to say, the legislative intent of KRS 304.20–020 is to make whole—to the extent possible—an injured party who would otherwise not receive compensation from an at-fault uninsured party. *Wine v. Globe American Casualty Company,* 917 S.W.2d 558 (Ky.1996).

---

3. See emphasized language of KRS 304.20–020, *supra.*

Other states have examined the effect of a liability carrier's settlement on a UM insurer's liability. These cases seek to resolve the apparent incongruity arising when a liability insurer denies coverage with one hand while simultaneously paying a settlement with the other. In *Rister v. State Farm Mutual Automobile Insurance Company*, 668 S.W.2d 132, 136 (Mo.App. 1984), for example, the Missouri Court of Appeals stated:

> When a liability insurer, after an initial denial of coverage, extends an offer in settlement, it may be said it has only conditionally withdrawn its denial. However, when such an offer is accepted, the liability insurer no longer denies coverage. In this case, when the $35,000 was offered and accepted, American Casualty no longer denied liability coverage. It paid $35,000 by reason of that coverage. The plaintiffs were not entitled to recover upon the uninsured motor vehicle insurance in the State Farm policies.

Similarly, the Court of Appeals of Minnesota has held that the insured's acceptance of a settlement from the liability carrier precludes recovery under the insured's uninsured motorist policy, notwithstanding the liability carrier's continued denial of coverage. *Jones v. Sentry Insurance Company*, 462 N.W.2d 90 (Minn.App. 1990). It stated that, "once Jones accepted the settlement offers, Sentry was no longer potentially liable under its uninsured motorist policy. This result is consistent with the purpose of uninsured motorist coverage, to give the victim injured by an uninsured motorist coverage which a victim would potentially receive if an insured motorist caused the accident." *Id.* at 91–92.

Though not controlling in Kentucky, this series of holdings is persuasive and provides insight into the rationale relied on in other jurisdictions to resolve the issue now before us. *See also*, Lee R. Russ, *9 Couch on Insurance 3d*, § 123:41 (3d ed.1997), which propounds a similar result. "Under an uninsured motorist policy defining an 'uninsured motor vehicle' to include a vehicle for which the potential insurer denies coverage, the insured's acceptance of a settlement offer from the tortfeasor's liability carrier precludes recovery of uninsured motorist benefits, notwithstanding the liability carrier's continued denial of coverage." *Id.*

Accordingly, we adopt the rationale of the extra-jurisdictional case law and hold that an injured party's acceptance of a settlement payout from a tortfeasor's liability insurer precludes recovery under the injured party's uninsured motorist policy, notwithstanding the liability insurer's continued denial of coverage. This holding reasonably achieves the underlying purpose of KRS Chapter 304 by triggering UM coverage only when the tortfeasor's liability insurer (if any) cannot or will not provide coverage. Coverage characterized as a settlement is coverage nonetheless.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991). "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact." *Id.* Finally, "[t]he standard of review on ap-

peal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky. App.1996).

We may affirm the trial court for any reason sustainable from the record. *Kentucky Farm Bureau Mutual Insurance Company v. Gray,* 814 S.W.2d 928 (Ky. App.1991). In the matter at bar, the circuit court properly concluded that Gaynell's acceptance of the settlement payout barred her from receiving UM coverage. It correctly found that there were no genuine issues as to any material fact and that Providian was entitled to judgment as a matter of law. Accordingly, we find no error.

For the foregoing reasons, we affirm the summary judgment of the Knott Circuit Court.

ALL CONCUR.