Barbara Ann STAMPER, Appellant,

v.

Steven Glen HYDEN; and the Standard Fire Insurance Company, Appellees.

No. 2009–CA–002033–MR.

Court of Appeals of Kentucky.

Feb. 18, 2011.

Nicholas M. Nighswander, Florence, KY, for appellant.

Thomas A. Sweeney, Joshua J. Leckrone, Crescent Springs, KY, for appellee The Standard Fire Insurance Company.

No Brief for Appellee Steven Glen Hyden.

Before CLAYTON, DIXON and WINE, Judges.

## OPINION

DIXON, Judge:

Barbara Ann Stamper appeals from a judgment of the Kenton Circuit Court entered upon a jury verdict in favor of Steven Glen Hyden and the Standard Fire Insurance Company. After careful review, we vacate the judgment and remand for further proceedings.

The issue presented on appeal is whether Stamper was entitled to recover uninsured motorist (UM) benefits from Standard Fire pursuant to her automobile insurance policy for damages resulting from the intentional criminal conduct of Hyden, her former boyfriend.

On November 14, 2003, Stamper obtained a domestic violence order of protection against Hyden in Kenton District Court. On November 17, while Stamper was stopped at an intersection in Fort Wright, Kentucky, an oncoming automobile struck the passenger side of her vehicle. Hyden, the driver of the other automobile, alighted from the vehicle and broke the driver's side window of Stamper's car. Hyden pushed himself through the window, sat on Stamper's lap, and began driving her vehicle southbound in the northbound lane of the highway. Stamper was able to regain control and stop the vehicle, and Hyden then fled the scene. Stamper sought medical treatment for injuries to her neck, shoulder, back, jaw, and she also received treatment for anxiety attacks and post-traumatic stress syndrome.

In April 2004, Hyden pled guilty to several criminal charges arising from the incident, including second-degree assault and first-degree wanton endangerment. Hyden was subsequently sentenced to five years' imprisonment. Thereafter, Stamper brought a personal injury action against Hyden and her UM carrier to recover

damages for her injuries.[1] During the course of litigation, the court granted partial summary judgment in favor of Stamper, finding Hyden liable for the collision, finding that Hyden was an uninsured motorist, and finding that Stamper had a valid UM policy. The week prior to trial, the court held a hearing to address the remaining issues and jury instructions. Specifically at issue was the language of the insuring agreement in Stamper's UM policy, which stated in pertinent part:

A. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

At the hearing, Standard Fire argued that the policy was inapplicable since Hyden's conduct was intentional; therefore, Stamper's damages were not caused by an "accident." In contrast, Stamper opined that her UM policy must be viewed according to principles of contract rather than tort. The trial court ultimately concluded that the UM policy did not encompass any intentional act committed by Hyden against Stamper. Thereafter, at the conclusion of the trial, the court instructed the jury, over Stamper's objection, as follows:

### INSTRUCTION NO. II

Under the policy of automobile insurance issued to the Plaintiff, Barbara Stamper, by the Defendant, The Standard Fire Insurance Company, the Defendant Company agreed to pay damages which the Plaintiff is legally entitled to recover from the operator of an uninsured motor vehicle because of bodily injury caused by an accident.

The Plaintiff, Barbara Stamper, is entitled to recover from the Defendant, The Standard Fire Insurance Company, for damages because of bodily injury sustained by her as a result of the operation of an uninsured motor vehicle by the Defendant, Steven Hyden. Provided, however, that the Plaintiff is entitled to recover from the Defendant Company for such damages only to the extent that they were caused by an accident.

The Plaintiff, Barbara Stamper, is entitled to recover from the Defendant, Steven Hyden, for damages sustained by her as a result of the motor vehicle collision and assault that occurred on November 17, 2003.

The instructions went on to provide separate questions regarding damages recoverable from Standard Fire for the collision, if it was an accident, and damages recoverable from Hyden for damages resulting from the collision and assault. The jury awarded Stamper zero damages. On August 21, 2009, the trial court entered judgment upon the jury's verdict in favor of Hyden and Standard Fire. Following the denial of her post-judgment motions, Stamper filed this appeal.

■ Stamper contends the trial court erred as a matter of law by instructing the jury to determine whether damages were the result of an accident, and she alternatively contends that a verdict of zero damages as to Hyden was inadequate under the evidence. After careful review of the relevant caselaw, we agree that the jury was erroneously instructed, which rendered the verdict unreliable.

---

1. The original complaint was filed against Traveler's Insurance Company, and Standard Fire was substituted as the proper defendant in December 2007.

■ We trace the origin of the erroneous instructions to the trial court's interpretation of the UM policy between Standard Fire and Stamper. The interpretation of an insurance contract is generally reserved for the court as a matter of law. *Stone v. Kentucky Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810 (Ky.App. 2000). "The words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning." *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky.1999). However, if the court determines that contractual language is susceptible to two reasonable interpretations, it must resolve the ambiguity in favor of the insured. *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.*, 870 S.W.2d 223, 227 (Ky.1994). "An ambiguity may either appear on the face of the policy or ... when a provision is applied to a particular claim." *Id.*

■ The Kentucky Supreme Court has stated, "UM coverage is *first party coverage*, which means that it is a contractual obligation directly to the insured...." *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895, 898 (Ky.1993). To recover UM benefits under an insurance contract, the insured must prove that "the offending motorist is a tortfeasor" and prove "the amount of damages caused by the offending motorist." *Id.* at 899. However, as long as the insurance policy complies with the statute, "individual insurers may, by contractual definitions, provide coverages and terms and conditions in addition to those required by the statute." *Burton v. Farm Bureau Ins. Co.*, 116 S.W.3d 475, 478 (Ky. 2003).

In the case at bar the following issues were established as a matter of law: Hyden's liability, his status as an uninsured motorist, and the existence of a UM policy between Standard Fire and Stamper. The disputed issue arose over the interpretation of the policy, specifically whether Stamper's damages were "caused by an accident."

Standard Fire and Stamper each advocate a different interpretation of the term "accident" as used in the policy. Standard Fire views the term "accident" from the perspective of Hyden, the uninsured tortfeasor. Conversely, Stamper argues that whether an "accident" occurred should be viewed from her perspective as the insured-victim. Standard Fire cites *Fryman for Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky.1986), wherein the Kentucky Supreme Court explained that "a consequence which is a result of plan, design or intent is commonly understood as not accidental." Accordingly, Standard Fire asserts that, because the collision resulted from Hyden's intentional criminal conduct, it was not an "accident" covered by Stamper's UM policy. What Standard Fire overlooks, however, is that the *Fryman* Court, addressing a life insurance policy, concluded that "a death is accidental absent a showing that the death was a result of plan, design or intent on the part of the decedent." *Id.* In *Fryman*, the decedent was the insured-victim, just as Stamper was the insured-victim in the case at bar. In *Stone v. Kentucky Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809 (Ky. App.2000), a panel of this Court, citing *Fryman*, noted that "an 'accident' denotes something that does not result from a plan, design, or an intent on the part of the insured." *Id.* at 812 (holding that homeowner's insurance policy did not cover intentional shooting by insured). Accordingly, Stamper asserts that the damages herein were caused by an "accident" within the meaning of the policy because she—as the insured—did not plan or intend for the collision to occur.

It appears that the facts of this case raise an issue of first impression in Ken-

tucky: On a claim for UM benefits, whose point of view determines whether an accident occurred—the perspective of the insured-victim or the perspective of the uninsured motorist—tortfeasor? Our Court has previously noted that "the legislative intent of KRS 304.20–020 is to make whole—to the extent possible—an injured party who would otherwise not receive compensation from an at-fault uninsured party." *Dyer v. Providian Auto & Home Ins. Co.*, 242 S.W.3d 654, 656 (Ky.App. 2007) citing *Wine v. Globe American Casualty Company*, 917 S.W.2d 558 (Ky. 1996). We believe the protective purpose of the statute is achieved by interpreting "accident" from the perspective of the insured-victim, and we join the majority of jurisdictions in adopting this view: *e.g.,* *Leatherby Ins. Co. v. Willoughby*, 315 So.2d 553 (Fla.App.1975); *Alabama Farm Bureau Mut. Cas. Ins. Co., Inc. v. Mitchell*, 373 So.2d 1129 (Ala.Civ.App.1979); *Keeler v. Farmers and Merchants Ins. Co.*, 724 S.W.2d 307 (Mo.App.1987); *Dyer v. American Family Ins. Co.*, 159 Ill. App.3d 766, 111 Ill.Dec. 530, 512 N.E.2d 1071 (1987); *General Acc. Ins. Co. of America v. Olivier*, 574 A.2d 1240 (R.I. 1990); *State Farm Mut. Auto. Ins. Co. v. McMillan*, 925 P.2d 785 (Colo.1996); *Wendell v. State Farm Mut. Auto. Ins. Co.*, 293 Mont. 140, 974 P.2d 623 (1999); and *State Farm Mut. Ins. Co. v. Pitman*, 148 N.H. 499, 809 A.2d 1280 (2002). In *Celina Mut. Ins. Co. v. Saylor*, 35 Ohio Misc. 81, 301 N.E.2d 721 (1973), the court, noting that the insured-victim "consciously contracted" with the carrier for UM protection, explained:

> The intent in the mind of the insured at the time of injury should determine whether the acts are accidental or intentional. To look through the eyes of the uninsured rather than the insured in this factual situation would require an unconscionable twisting of the obvious purpose of purchasing insurance coverage.
>
> All reason and logic would require a construction and interpretation that intent of mind should be taken from the viewpoint of the insured. Since the insured in the instant case was clearly not acting intentionally to warn herself, since the [insured] in the instant case was the party privy to the insurance contract; since the [insured] herein is the party who paid the premium for coverage to protect herself from the risk of injury caused by an uninsured third person it is the court's belief that the provisions of the insurance policy must be construed most favorably from the insured's viewpoint.

*Id.* at 723.

In the case at bar, Stamper was an insured-victim of the intentional criminal conduct perpetrated by Hyden, an uninsured motorist. The record indicates that the incident was unexpected by Stamper and not her plan, design, or intent. After careful consideration, we conclude that the November 17, 2003, incident was an "accident" within the meaning of her UM policy; consequently, the jury instructions were erroneous on this issue.[2]

---

2. We also note our concern that the instructions allowed the jury to consider separate theories of liability as to Standard Fire (collision only) and Hyden (collision and subsequent assault). The UM policy required the uninsured motorist's liability to "arise out of the ownership, maintenance or use of the 'uninsured motor vehicle.'" At the hearing below, Standard Fire asserted that its liability for UM benefits was limited to the initial collision, contending the policy did not encompass Hyden's conduct once he exited his vehicle. Stamper argued that there was "no break in the action," as Hyden collided with Stamper's car and then commandeered her vehicle, all while maintaining his status as an

The Kentucky Supreme Court has addressed appellate review of instructional error as follows:

> The rule is that generally an erroneous instruction is presumed to be prejudicial to appellant, and the burden is upon appellee to show affirmatively from the record that no prejudice resulted; and when the appellate court cannot determine from the record that the verdict was not influenced by the erroneous instruction, the judgment will be reversed.

*Drury v. Spalding*, 812 S.W.2d 713, 717 (Ky.1991), quoting *Prichard v. Kitchen*, 242 S.W.2d 988, 992 (Ky.1951) (internal quotation marks omitted.).

In the case *sub judice*, Standard Fire concedes the trial court erred by failing to interpret the meaning of "accident" in the UM policy as a matter of law; however, Standard Fire contends the error was harmless because the trial court would have followed the minority view of jurisdictions by interpreting the meaning of "accident" from the tortfeasor's perspective. Despite the instructional error, Standard Fire asserts that the jury properly weighed the disputed medical evidence and concluded that Stamper failed to prove she suffered damages as a result of the incident.

We find Standard Fire's argument unpersuasive, and we cannot conclude from the record that the verdict was not influenced by the erroneous instruction. Under the circumstances presented here, "[r]ather than speculating whether the jury understood the issues despite the instructions, we must presume that a verdict was influenced by an improper instruction." *Ford Motor Co. v. Fulkerson*, 812 S.W.2d 119, 124 (Ky.1991). As the erroneous instructions potentially confused or misled the jury by limiting Stamper's recovery to damages that were caused by an accident, we conclude Stamper is entitled to a new trial.[3]

For the reasons stated herein, we vacate the judgment of the Kenton Circuit Court and remand this case for further proceedings consistent with this opinion.

ALL CONCUR.

---

uninsured motorist. The trial court agreed with Standard Fire and instructed the jury that Standard Fire's liability extended only to damages arising from the collision.

We reiterate that a UM policy provides first-party coverage based on the insurance contract between the carrier and its insured. *Coots*, 853 S.W.2d at 898. In *Hugenberg v. West American Ins. Company/Ohio Cas. Group*, 249 S.W.3d 174 (Ky.App.2006), this Court offered the following interpretation:

> The words 'arising out of * * * use' in an automobile liability insurance policy, are broad, general and comprehensive terms meaning 'originating from,' or 'having its origin in,' 'growing out of' or 'flowing from'. . . . All that is required to come within the meaning of the words 'arising out of the * * * use of the automobile' is a causal connection with the accident.

*Id.* at 186, citing *Insurance Co. of North America v. Royal Indemnity Co.*, 429 F.2d 1014, 1017–18 (6th Cir.1970).

**3.** In light of our decision, we decline to address Stamper's second claim of error regarding the inadequacy of the damage award against Hyden, since the erroneous instructions rendered the entire verdict unreliable.