**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 2, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

CHRISTINA PACHECO,

      Plaintiff-Appellant,

v.

SHELTER MUTUAL INSURANCE
COMPANY; and SHELTER
GENERAL INSURANCE COMPANY,
a Missouri corporation,

      Defendants-Appellees.

No. 08-1046

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:06-CV-01165-JLK-BNB)**

---

William Babich of The Law Firm of William Babich, LLC, Denver, Colorado, for
Plaintiff-Appellant.

Steven J. Dawes of Light Harrington & Dawes, P.C., Denver, Colorado, for
Defendants-Appellees.

---

Before **HARTZ**, **SEYMOUR** and **TYMKOVICH**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Christina Pacheco appeals the district court's grant of summary judgment in favor of Shelter Mutual Insurance Company ("Shelter Mutual") and Shelter General Insurance Company ("Shelter General"). We reverse and hold that Shelter General's policy exclusion of resident relatives who own a vehicle from Uninsured Motorist/Underinsured Motorist ("UM/UIM") coverage violates Colorado public policy. In so doing, we agree with the district court that issues of fact remain regarding whether Shelter General properly advised and offered UM/UIM coverage in an amount equal to the bodily injury limits for that policy. Finally, we decline to address Ms. Pacheco's argument that her own Shelter Mutual policy coverage can be stacked with the Shelter General policies issued to her parents, leaving this issue to be addressed in the first instance by the district court on remand.

## I.

On August 8, 2000, Ms. Pacheco was injured in an automobile accident caused by an underinsured motorist.[1] She settled with the tortfeasor's insurer for $25,000, the maximum amount recoverable under his policy limits. At the time of

---

[1] Colorado's UM/UIM Statute defines an underinsured motor vehicle as a vehicle that carries insurance but in an amount: "(a) Less than the limits for uninsured motorist coverage under the insured's policy; or (b) Reduced by payments to persons other than an insured in the accident to less than the limits of uninsured motorist coverage under the insured's policy." COLO. REV. STAT. § 10-4-609(c)(4) (2000).

the accident, Ms. Pacheco was the named insured on Shelter Mutual policy #5-1-C-3682601-7 ("Policy No. 7"), which covered the vehicle she was operating at the time of the accident. Ms. Pacheco's parents, Bernice and Tino Pacheco, with whom she resided, were the named insureds on Shelter General policies #5-1-C-3682601-5 ("Policy No. 5") and #5-1-C-3682601-6 ("Policy No. 6"). Seeking compensation for her remaining damages, Ms. Pacheco submitted a claim for UM/UIM benefits to her insurer, Shelter Mutual, and to her parents' insurer, Shelter General. Both insurance companies denied coverage, and Ms. Pacheco instituted an arbitration action against Shelter Mutual. The arbitration panel determined she sustained $125,000 in bodily injury damages and awarded her interest on the unpaid amount ($100,000) pursuant to C.R.S. § 13-21-101 and costs. Finding UM/UIM coverage under her policy, the arbitration panel awarded her the UM/UIM policy limit of $50,000 less $25,000 received from the tortfeasor settlement for a total of $25,000. The arbitration panel held that it did not have jurisdiction to determine whether the UM/UIM limits on Policy No. 6 should be increased,[2] or whether Ms. Pacheco could stack coverage from her parents' policies. Shelter Mutual paid Ms. Pacheco the $25,000 but not the costs award.

Ms. Pacheco brought suit in Colorado state court against Shelter Mutual and Shelter General seeking a reformation of Policy No. 6 by asking the court to

---

[2] Prior to the accident, Policy No. 6's liability coverage was increased from $50,000/$100,000 to $100,000/$300,000.

declare that the policy should be construed to provide a $100,000 limit for UM/UIM coverage because Shelter General failed to properly offer UM/UIM coverage in an amount equal to the bodily injury limits and to obtain rejection of such coverage in writing in accordance with COLO. REV. STAT. § 10-4-609(2). She also asserted that the anti-stacking language in the two policies issued to her parents was not applicable to her situation and that she was therefore entitled to damages resulting from the stacked policies.

Defendants removed the case to federal court and the parties filed cross motions for summary judgment. The court denied Ms. Pacheco's motion, concluding that there were issues of fact as to whether Shelter General met its obligation to Ms. Pacheco's parents to properly advise and offer them UM/UIM coverage in an amount equal to the bodily injury coverage of that policy. The court then granted summary judgment to defendants, holding that Ms. Pacheco was not an insured under her parents' policies. The court relied on the relevant policy provision which provides: "We will pay damages for bodily injury which an insured . . . is legally entitled to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle. . . . Insured means: (a) You and any relative." Aplt. App. at 217-18.[3] The policy defines "relative" as "a person related to you by blood, marriage, or adoption and who is a resident of and

---

[3] Policies Nos. 5 and 6 contain the identical provision.

actually living in your household, *provided neither the relative nor the relative's spouse owns, in whole or in part, an auto.*" *Id.* at 213, 237 (emphasis added). The policies' definition of relative applies to both bodily injury liability coverage and UM/UIM coverage. The district court noted that although Ms. Pacheco was a relative residing in the home, the non-ownership-of-a-vehicle condition limiting the policy's definition of a "relative" effectively excluded her from coverage.

Because the district court determined Ms. Pacheco was not an insured under her parents' policies, it did not reach the issue of whether those policies could be stacked with hers to allow her to recover the remaining $75,000 in damages. Moreover, the determination that Ms. Pacheco was not an insured effectively mooted the question whether Shelter General had met its obligation to properly advise Ms. Pacheco's parents regarding UM/UIM coverage in an amount equal to bodily injury coverage.

## II.

This appeal involves the ever-evolving body of law surrounding uninsured motorist and underinsured motorist coverage in the state of Colorado.[4] This action arises under a prior version of the UM/UIM Statute, Colorado Revised

---

[4] We apply Colorado law as a court sitting in diversity jurisdiction. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 77-78 (1938); *Mem'l Hosp. of Laramie County v. Healthcare Realty Trust Inc.*, 509 F.3d 1225, 1229 (10th Cir. 2007).

Statute § 10-4-609 (2000), and the former Colorado Auto Accident Reparation

Act ("No-Fault Act"), Colorado Revised Statute §§ 10-4-701 to -726 (2000). The

No-Fault Act was repealed effective July 1, 2003 pursuant to a sunset provision.

*See* COLO. REV. STAT. § 10-4-726, *amended by* 2001 Colo. Sess. Laws, Ch. 165 §

6 and 2002 Colo. Sess. Laws, Ch. 189 § 1.[5]

The No-Fault Act and the UM/UIM statute worked in tandem to require

motor vehicle owners to obtain liability insurance while ensuring that individuals

purchasing such coverage had the option of protecting themselves against

uninsured and underinsured motorists. As declared by the general assembly, the

purpose of the No-Fault Act was to "avoid inadequate compensation to victims of

automobile accidents[] [and] to require registrants of motor vehicles in this state

to procure insurance covering legal liability arising out of ownership or use of

such vehicles and also providing benefits to persons occupying such vehicles and

to persons injured in accidents involving such vehicles." COLO. REV. STAT. §

10-4-702. The purpose of the UM/UIM statute was "to assure the widespread

availability to the insuring public of insurance protection against financial loss

caused by negligent financially irresponsible motorists." *Aetna Cas. & Sur. Co.*

*v. McMichael*, 906 P.2d 92, 98 (Colo. 1995) (en banc) (quoting 1965 Colo. Sess.

Laws 333 (Declaration of Purpose)); *see also DeHerrera v. Sentry Ins. Co.*, 30

---

[5] Unless otherwise noted, all citations refer to the statutory provision in effect at the time of the accident, August 2000.

P.3d 167, 174 (Colo. 2001) ("UM/UIM coverage replaces the benefits an innocent injured insured would have recovered from an uninsured or underinsured tortfeasor, if the tortfeasor had been insured for liability coverage to the same extent that the injured insured was covered for UM/UIM benefits.").

The first question we address on appeal is whether a Colorado insurance policy could, in 2000, exclude resident relatives who own a car from UM/UIM coverage. Ms. Pacheco argues that the policy's exclusion violates public policy. We agree. For the reasons that follow, we hold that where Colorado statutory law defined "insured" to include "relatives of the named insured who reside in the same household as the named insured," COLO. REV. STAT. § 10-4-703(6), a policy that attempted to exclude from UM/UIM coverage vehicle-owning relatives meeting that definition is void and unenforceable.

Ms. Pacheco filed a motion with this court to certify this question to the Colorado Supreme Court. She did not request certification in the district court, however, and "[w]e generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court." *In re Midpoint Dev., L.L.C.*, 466 F.3d 1201, 1207 (10th Cir. 2006) (quotation marks omitted). Furthermore, we are not convinced the issue is so novel that its resolution requires further guidance from the Colorado Supreme Court. *See Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007). After the district court's decision in this case, the Colorado

Court of Appeals issued an unpublished opinion directly on point. *See State Farm Mut. Auto. Ins. Co. v. Am. Family Mut. Ins. Co.*, No. 06CA2667 2008 WL 2612412 (Colo. App. July 3, 2008) (unpublished decision) (hereinafter the "*Meza*" case).[6] Although the decision does not have precedential value, *In re Title and Ballot Title and Submission Clause for 2005-2006 #55*, 138 P.3d 273, 276 (Colo. 2006) (opinions not selected for publication have no value as precedent); *Welby Gardens v. Adams County Bd. of Equalization*, 71 P.3d 992, 999 (Colo. 2003) (en banc) (same), we consider its reasoning persuasive and in accord with Colorado law.

In Colorado, insurance companies offering bodily injury liability coverage must offer policyholders uninsured/underinsured motorist insurance. COLO. REV. STAT. § 10-4-609(1)(a); *Massingill v. State Farm Mut. Auto. Ins. Co.*, 176 P.3d 816, 820 (Colo. App. 2007), *cert denied*, No. 07SC740, 2008 WL 434588 (Feb. 19, 2008) (en banc). Unlike liability insurance, however, UM/UIM insurance is

---

[6] In *Meza*, the policy defined "insured person" to include a relative living in the same household as the named insured, provided neither they nor their spouse owned a motor vehicle. Aplt.'s Supp. Authority, Ex. 1 at 2. The policyholders were the victim's daughters, who lived with their mother at the time of the accident. *Id.* The court held "the limited definition of 'relative' in [the policy] was in contravention of the intent of the UM/UIM statute," and was therefore void and unenforceable. *Id.* at 7, 11. The court based its conclusion on the requirement under state law that UM/UIM coverage be offered in levels coextensive with liability coverage. *Id.* The court stated that because the policy's exclusion violated statutorily required liability coverage, it also violated the UM/UIM statute. *Id.* at 11.

not mandatory; policyholders may decline coverage.  *See Massingill*, 176 P.3d at 820.

> [T]he intent is to put a person injured by an uninsured or underinsured motorist in the same position as one injured by a tortfeasor insured in compliance with the law.  In effect, UM/UIM coverage limits act as a replacement for the liability policy limits of an underinsured motorist who is at fault in a motor vehicle accident.

*Loar v. State Farm Mut. Auto. Ins. Co.*, 143 P.3d 1083, 1085 (Colo. App. 2006) (citations omitted).

The Colorado Supreme Court has interpreted § 10-4-609(1) of the UM/UIM statute to require insurers to "offer UM/UIM coverage to a class as extensive as the class covered under the liability provision of an automobile insurance policy." *McMichael*, 906 P.2d at 98.  Because UM/UIM coverage must be offered to the class protected by statute for liability coverage, we can look to statutorily mandated liability coverage to determine the minimum level of UM/UIM coverage that an insurer must offer a policyholder.  In other words, if Ms. Pacheco is among the class entitled by statute to coverage under compulsory liability limits, she is also entitled to UM/UIM coverage.[7]

---

[7] We note that Ms. Pacheco did not bring this rationale to the district court's attention, which is likely why it focused exclusively on UM/UIM coverage requirements without regard for the relationship between compulsory liability coverage and UM/UIM coverage.  We nevertheless address this argument because defendants do not assert that Ms. Pacheco waived it and because it is an alternate rationale for the argument Ms. Pacheco has made all along, that the policy's limited definition of "relative" violates Colorado public policy.

During the time period relevant to this case, § 10-4-703(6) of the No-Fault Act codified the class of individuals to whom statutorily-mandated minimum liability coverage was required to extend. *See Finzio v. Am. Hardware Mut. Ins. Co*, 967 P.2d 188, 190 (Colo. App. 1998); *Truck Ins. Exch. v. Home Ins. Co*, 841 P.2d 354, 356 (Colo. App. 1992). The No-Fault Act defined "insured" as "the named insured, relatives of the named insured who reside in the same household as the named insured, or any person using the described motor vehicle with the permission of the named insured." COLO. REV. STAT. § 10-4-703(6) (2000). The parties do not dispute that Ms. Pacheco is a "relative of the named insured who resides in the same household." *Id.* Thus, Ms. Pacheco satisfied the No-Fault Act's definition of "insured." But because she owned a vehicle, Ms. Pacheco was excluded as an insured under her parents' policies, which only covered resident relatives who did not own a vehicle. The question, therefore, is whether the policies' non-ownership-of-a-vehicle condition conflicted with statutorily mandated coverage under the No-Fault Act.[8]

We hold that it did. An insurance policy provision that attempts to dilute, limit, or condition statutorily mandated coverage is void and invalid as against public policy. *Finzio*, 967 P.2d at 190. As relevant here, an automobile

---

[8] Where there is a conflict between an insurance policy and a statute, the statute controls. *Truck Ins. Exch.*, 841 P.2d at 356 ("The provisions of the [No-Fault] Act are included as part of every automobile insurance policy and govern in any conflict between a policy and the Act.").

insurance policy cannot narrow the class of individuals who are required to be covered under the No-Fault Act: "if a person seeking coverage is one for whom coverage is required by statute, an insurer cannot limit its statutory obligation by a contractual provision contrary to the requirements of the No-Fault Act." *Id.* (policy's exclusion of permissive users who carry liability coverage of their own violates the No-Fault Act, which includes all permissive users); *see also DeHerrera*, 30 P.3d at 171, 172 (policy's limitation of coverage to individuals occupying a vehicle at the time of the injury violates the No-Fault Act, which requires coverage of insured involved in an accident with "*any* motor vehicle"); *Truck Ins. Exch.*, 841 P.2d at 356, 357 (policy's exclusion of permissive users who are injured while moving property violates No-Fault Act, which extends to all permissive users). By excluding individuals who own a vehicle from its definition of "relatives," and thus from the class of individuals insured under the policy, Shelter General's policy attempts to limit or condition statutorily mandated coverage. Such narrowing is impermissible unless the exclusion is expressly authorized. *See id.* at 357. Defendants have not argued that the non-ownership-of-a-vehicle condition was so authorized. Therefore, the policy's exclusion of resident relatives owning vehicles from liability coverage is void and unenforceable. *See Finzio*, 967 P.2d at 190; *Truck Ins. Exch.*, 841 P.2d at 357. Because UM/UIM coverage must be offered to a class coextensive with the class covered under the policy's liability provision, *McMichael*, 906 P.2d at 98, the

-11-

exclusion of resident relatives owning vehicles is also void and unenforceable for the purposes of UM/UIM coverage. The appropriate remedy is to consider the offending provision void and provide coverage to the limits of the policy. *See Finzio*, 967 P.2d at 191.

Defendants point out that the version of the UM/UIM statute in effect in 2000 did not define an "insured." They argue that we should infer from the addition of a definition of an insured in 2003 – which they concede would not permit exclusion of a relative who owns a vehicle – that the prior version of the statute must have allowed such an exclusion. This argument does not save them because we are not relying on the UM/UIM statute's definition of an insured, but instead on the No-Fault Act, which defined an insured to include all relatives residing in the policyholder's household. Furthermore, the likely explanation for the UM/UIM statute's failure to define insured prior to 2003 was that it incorporated the definitions provided in the No-Fault Act by requiring the offer of UM/UIM coverage to "persons insured thereunder." COLO. REV. STAT. § 10-4-609(1) (2000).

Defendants also argue that the policies' exclusions are consistent with Colorado public policy because they encourage individuals who own an automobile to purchase their own insurance. While this may be true in some instances, the Colorado Supreme Court in *DeHerrera* rejected a similar argument, reasoning that it is the job of the legislature to adopt exclusions. *DeHerrera*, 30

-12-

P.3d at 176. For the foregoing reasons, we reverse the district court's conclusion that Ms. Pacheco was not an insured under her parents' policies.

## III.

Ms. Pacheco also seeks to reform Policy No. 6 to provide for UM/UIM coverage in the amount equal to liability coverage. In 2000, the Pachecos increased the bodily injury liability limits on Policy No. 6 from $50,000 per person and $100,000 per accident ("$50,000/$100,000") to $100,000 per person and $300,000 per accident ("$100,000/$300,000), but did not raise the UM/UIM limits, leaving them at $50,000/$100,000.[9] The district court concluded that a genuine issue of material fact exists as to whether Shelter General properly offered the Pachecos higher levels of UM/UIM coverage when they increased their liability coverage.

---

[9] Ms. Pacheco asserts that when her parents replaced a 1996 GMC Sonoma with a 2000 model, they selected $100,000/$300,000 in bodily injury coverage, consistent with the required minimum levels under the vehicle's lease conditions. Shelter General contends that Policy No. 6 started at $50,000/$100,000 in both liability and UM/UIM limits, and the insured later increased the liability limits to $100,000/$300,000. It is unclear whether Shelter General means that the lower coverage was for the 1996 model, and then was increased when replaced by the 2000 model, consistent with Ms. Pacheco's assertion, or that liability limits for the 2000 model began at $50,000/$100,000 and were later increased to $100,000/$300,000. In the end, resolution of this fact will not affect the outcome: the parties agree on the relevant fact – at some point prior to the accident, the insured increased Policy No. 6's liability coverage from $50,000/$100,000 to $100,000/$300,000.

On appeal, Ms. Pacheco argues (1) there are no genuine issues of material fact and (2) the district court was incorrect as a matter of law that Shelter General had only a one-time duty to offer UM/UIM coverage co-extensive with liability limits. We agree with the district court that genuine issues of material fact remain as to whether Shelter General met its obligation under the statute, and we write to clarify the applicable law.

The Colorado Supreme Court has explained the relevant provisions of the UM/UIM statute:

> Subsection (1) of section 10-4-609 prohibits an insurer from issuing an automobile liability policy unless UM/UIM coverage is included in the policy, except where the named insured rejects UM/UIM coverage in writing. Subsection (2) requires an insurer, "[p]rior to the time the policy is issued or renewed," to notify the insured of the right to obtain UM/UIM coverage at a level higher than the minimum liability limits of $25,000 [per person] and $50,000 per accident. Subsection (3) relieves the insurer of any duty to notify the insured of the availability of UM/UIM coverage "in any renewal or replacement policy" once the insured has either selected UM/UIM limits or has exercised the option not to purchase such coverage.

*Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 912 (Colo. 1992).

We begin by dismissing Ms. Pacheco's argument that Shelter General was required to show a written rejection of UM/UIM coverage in the amount of $100,000/$300,000: a written rejection of coverage is only required if the insured declines UM/UIM coverage entirely, which is not the case here. COLO. REV. STAT. § 10-4-609(1). Under § 10-4-609(2), the insurer has a one-time duty to notify the insured of the nature and purpose of UM/UIM coverage and to offer

-14-

UM/UIM coverage equal to the lesser of the insured's bodily injury liability limits or $100,000/$300,000.[10] *Parfrey*, 830 P.2d at 912. Section 10-4-712 further clarifies § 10-4-609's requirements, specifying that the insurer does not have a duty to offer higher UM/UIM coverage when the policyholder makes a change to the policy. COLO. REV. STAT. § 10-4-712(3)(c)(2000).[11] However, subsection (II)(H) contains an exception to this rule, requiring the insurer to offer new UM/UIM coverage pursuant to § 10-4-609(2) "if there is an increase in bodily injury liability limits and the limits of the uninsured motorist coverage would be less than such limits." *Id.* at § 10-4-712(3)(c)(II)(H).

Ms. Pacheco argues that her case is governed by § 10-4-712(c)(II)(H), and that Shelter General was therefore required to offer her parents UM/UIM coverage equal to the bodily injury liability limits when they raised their liability coverage from $50,000/$100,000 to $100,000/$300,000. We agree. We conclude

---

[10] At the time the policy was issued, § 10-4-609(2) required, in relevant part, "Prior to the time the policy is issued or renewed, the insurer shall offer the named insured the right to obtain higher limits of uninsured motorist coverage in accordance with its rating plan and rules, but in no event shall the insurer be required to provide limits higher than the insured's bodily injury liability limits or one hundred thousand dollars per person and three hundred thousand dollars per accident, whichever is less." COLO. REV. STAT. § 10-4-609(2) (2000). Subsection (2) was later amended to read: "Before the policy is issued or renewed, the insurer shall offer the named insured the right to obtain uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits, but in no event shall the insurer be required to offer limits higher than the insured's bodily injury liability limits." COLO. REV. STAT. § 10-4-609(2)(2007).

[11] This provision, with only minor changes, is now located in the UM/UIM statute. *See* COLO. REV. STAT. § 10-4-623(3)(c)(II) (2003).

that § 10-4-712(3)(c)(II)(H) required Shelter General to offer higher UM/UIM coverage when the Pachecos increased their bodily injury liability limits, regardless of whether the policy was a new policy, a replacement policy, or a renewal policy (a fact the parties dispute).

The relevant fact question, therefore, is whether Shelter General properly offered the Pachecos UM/UIM coverage carrying limits of $100,000/$300,000 when they increased the liability coverage on Policy No. 6. The Colorado Supreme Court has specified factors to consider in determining, under a totality of the circumstances approach, whether the insurer satisfied its duty to notify and offer higher UM/UIM coverage:

> [A] court may appropriately consider such factors as the clarity with which the purpose of UM/UIM coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of UM/UIM coverage could be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer.

*Finzio*, 830 P.2d at 913. As the district court correctly found, there is a factual dispute over whether an offer was made. In light of our holding that Ms. Pacheco is an insured under her parents' policies, we remand to the district court for further proceedings to determine whether the policy should be reformed.

-16-

**IV.**

Finally, Ms. Pacheco argues that the insurance policy issued in her name can be "stacked" with the policies issued to her parents, thereby increasing the total amount she can recover. The district court did not reach this issue because it found Ms. Pacheco was not an insured under her parents' policies. Consequently, we decline to address it and instead remand to the district court for consideration in the first instance.

**V.**

We **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings in accordance with this opinion.