FILED
United States Court of Appeals
Tenth Circuit

August 24, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

     Plaintiff-Appellee,

v.

BARBARA FISHER,

     Defendant-Appellant.

No. 09-1415

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:08-cv-01687-REB-MEH)**

Steven T. Nolan, Steven T. Nolan, P.C., Colorado Springs, Colorado, (Joseph R. Winston, The Winston Law Firm, P.C., Colorado Springs, Colorado, with him on the briefs), for Defendant-Appellant.

Marc R. Levy, (Scot C. Kreider with him on the brief), Levy, Morse & Wheeler, P.C., Englewood, Colorado, for Plaintiff-Appellee, State Farm Mutual Auto Insurance Company.

Before **BRISCOE,** Chief Judge, **HOLLOWAY,** and **KELLY,**[*] Circuit Judges.

---

    [*] Former Chief Circuit Judge Robert H. Henry was originally a member of this panel. He resigned his commission effective June 30, 2010, and has been replaced on this panel by Circuit Judge Paul J. Kelly, Jr.

**BRISCOE**, Chief Judge.

---

State Farm Mutual Automobile Insurance Company ("State Farm") filed this declaratory judgment action as a result of a claim for uninsured motorist benefits filed by Barbara Fisher ("Ms. Fisher"). Ms. Fisher appeals the district court's grant of summary judgment to State Farm. Ms. Fisher also appeals the district court's grant of summary judgment to State Farm on a counterclaim which she brought against State Farm alleging unreasonable delay or denial of an insurance claim. We have jurisdiction pursuant to 28 U.S.C. § 1291, and AFFIRM.

**I**

On November 5, 2007, Tiffany Howard, a high school student in Colorado Springs, Colorado, telephoned Jeremy Vialpondo and asked him to pick her up at her residence because she was concerned about the conduct of her ex-boyfriend, Andrew Brown. At the time, Vialpondo, Caleb Moore, and Robert Ellsworth were passengers in a Ford Explorer being driven by Ms. Fisher's son, Michael Fisher ("Mr. Fisher").

Shortly after picking up Howard, Mr. Fisher and his passengers noticed that they were being followed by a Chevrolet Suburban driven by Brown. After Brown followed Mr. Fisher and his passengers for approximately two miles and rammed his vehicle into theirs several times, Brown pulled next to the Explorer

2

and fired a shotgun at it, striking Vialpondo. Moore was also struck by flying glass as a result of the shotgun blast.

Mr. Fisher then pulled the Explorer to the side of the road, got out of the vehicle, and attempted to obtain assistance for Vialpondo. Howard, Moore, and Ellsworth also got out of the Explorer at this time. Meanwhile, Brown turned the Suburban around and parked it behind the Explorer and perpendicular to the flow of traffic. Brown then got out of the Suburban and within moments, shot and killed Mr. Fisher, who was standing in the middle of the roadway. Brown then chased Howard into a field next to the road where he began to physically assault her. However, upon the arrival of law enforcement, Brown abandoned his assault of Howard and returned to the Suburban where he obtained another firearm which he used to shoot and kill himself.

Based on these events, Ms. Fisher, acting on behalf of Mr. Fisher's estate, filed an insurance claim with Geico Direct ("Geico"), the insurer of the Suburban Brown had been driving. Geico declined coverage, citing an intentional acts exclusion in the policy which covered the Suburban. Consequently, Ms. Fisher filed an uninsured motorist ("UM") claim with her own insurer, State Farm, with whom she had a policy on the Explorer her son had been driving. Vialpondo and his mother and next friend Lorrie Vasquez, as well as Moore and his mother and next friend Stacey Moore, also submitted UM claims to State Farm, asserting that Vialpondo and Moore were also covered by Ms. Fisher's policy.

3

After these claims were submitted, State Farm filed a declaratory judgment action in the United States District Court for the District of Colorado seeking declarations (1) that Mr. Fisher's death, along with his passengers' injuries, were not caused by an accident that involved the operation and/or use of an uninsured motor vehicle as defined by State Farm's policy, and (2) that Ms. Fisher cannot obtain the stacked limits of two State Farm policies potentially applicable to her son's death. In response, Ms. Fisher filed a counterclaim pursuant to Colo. Rev. Stat. § 10-3-1116(1), alleging that State Farm unreasonably delayed or denied payment of insurance benefits to which she is entitled, while Vialpondo and Vasquez and the Moores filed counterclaims based upon a common law theory of bad faith.

Ms. Fisher and State Farm resolved the stacking issue by stipulation, and the parties subsequently filed a series of motions seeking summary judgment on the remaining issues. As regards the district court's rulings that are relevant to this appeal, the court denied State Farm's motion for summary judgment on the issue of causation with respect to Vialpondo and Vasquez and the Moores, but granted it with respect to Ms. Fisher, holding that Mr. Fisher's death did not arise out of the use of an uninsured motor vehicle. The district court also granted summary judgment to State Farm on Ms. Fisher's unreasonable delay or denial counterclaim.

Ms. Fisher filed this timely appeal, challenging both of the district court's

4

grants of summary judgment. After hearing oral argument, we certified the question of Ms. Fisher's entitlement to UM benefits to the Colorado Supreme Court pursuant to 10th Cir. R. 27.1 and Colo. App. R. 21.1. See State Farm Mut. Auto. Ins. Co. v. Fisher, — F.3d —, 2010 WL 2382263 (10th Cir. June 14, 2010). The Colorado Supreme Court, however, issued an en banc order on June 26, 2010, declining to answer.

## II

"We review the entry of summary judgment de novo." Sewell v. Great N. Ins. Co., 535 F.3d 1166, 1170 (10th Cir. 2008) (internal quotation marks omitted). In so doing, "[w]e view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." Id. (internal quotation marks omitted). Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(2).

As our jurisdiction in this case arises in diversity, the law of the forum state, in this case Colorado, governs our analysis of the underlying claims. See Reid v. Geico Gen. Ins. Co., 499 F.3d 1163, 1167 (10th Cir. 2007). Accordingly, "we apply the law as set forth by [Colorado's] highest court." Long v. St. Paul Fire & Marine Ins. Co., 589 F.3d 1075, 1081 (10th Cir. 2009). "The decisions of lower [Colorado] courts, while persuasive, are not dispositive." Id.

5

*DID MICHAEL FISHER'S DEATH ARISE OUT OF THE "USE" OF AN UNINSURED MOTOR VEHICLE?*

Pursuant to Colo. Rev. Stat. § 10-4-609(1)(a), automobile insurers in Colorado are "require[d] . . . to provide coverage against uninsured motorists for injuries 'arising out of the ownership, maintenance or use of a motor vehicle,' unless rejected in writing by the insured." State Farm Mut. Auto. Ins. Co. v. Kastner, 77 P.3d 1256, 1260 (Colo. 2003) (quoting Colo. Rev. Stat. § 10-4-609(1)(a)). Accordingly, the Colorado Supreme Court has noted that all UM policy provisions in Colorado automobile insurance contracts "are express attempts to conform to statutory requirements,"[1] and thus, that the judicial interpretation of such provisions "should reflect the overall legislative purpose of the UM . . . statute[]" which is "to provide compensation for injury caused by an uninsured motorist equal to that obtainable for injury caused by an insured motorist." See id. (internal quotation marks omitted).

---

[1] Ms. Fisher's State Farm policy reads, in relevant part, as follows:

> We [State Farm] will pay compensatory damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be:
>
> 1.   sustained by an insured; and
>
> 2.   caused by an accident that involves the operation, maintenance, or use of an uninsured motor vehicle as a motor vehicle.

App. at 345 (emphasis removed).

6

To this end, the Colorado Supreme Court, in <u>Kastner</u>, adopted a two-part test to determine whether UM benefits are available under a Colorado automobile insurance policy. To be entitled to benefits, a claimant must first demonstrate that an uninsured motor vehicle was being "used" at the time he or she sustained an injury. <u>Id.</u> at 1261. If so, "the next prong of the inquiry is whether the 'use' is causally related to the . . . injury." <u>Id.</u> at 1263. We address each of <u>Kastner</u>'s two prongs in order.

*1.    "Use" of a Motor Vehicle*

"As a threshold matter to recovery under [the UM] . . . provision[] of a [Colorado motor vehicle insurance] policy, the claimant must show that *at the time of the 'accident,'* the [uninsured] vehicle was being 'used' in a manner contemplated by the policy in question." <u>Id.</u> at 1261 (emphasis added) (internal quotation marks and footnote omitted). And according to the <u>Kastner</u> court, "unless articulated otherwise in the policy, the only use of a non-commercial passenger vehicle that is foreseeable or conceivable at the time of contracting for insurance is use as a means of transportation." <u>Id.</u> at 1262.

State Farm contends that this first prong of <u>Kastner</u>'s test is satisfied only if the foreseeable use of the motor vehicle—in this case as a means of transportation—occurs contemporaneously with the injurious conduct. Accordingly, State Farm argues that because Brown got out of the Suburban before shooting Mr. Fisher, his death did not arise out of Brown's use of the

7

Suburban.  Ms. Fisher counters that <u>Kastner</u>'s first prong does not require contemporaneity so long as the events in question constitute one ongoing assault, which she claims describe Brown's actions.

In <u>Kastner</u>, a victim was abducted in a parking lot and transported in her own car at knifepoint to a remote location where she was sexually assaulted while she was still in the vehicle.  <u>See</u> 77 P.3d at 1258-59.  In addressing the question of whether the victim was entitled to UM benefits, the Colorado Supreme Court held that neither of the two prongs it announced earlier in its opinion had been satisfied.  In so doing, the court noted that the "[u]se of a car to get to an isolated area to commit a crime may relate to a vehicle's general transportation purpose, but here it *was not concurrent* with the injury itself, *and* . . . it lacks the requisite causal connection between sexual assault and 'use' of a car for transportation." <u>Id.</u> at 1265 (emphasis added).  This language might be fairly read to support State Farm's position in the case at bar because it suggests that the claim in <u>Kastner</u> failed the first, or "use" prong because the assailant's utilization of the vehicle as a means of transportation was not contemporaneous with his assault upon the woman he abducted.

That <u>Kastner</u>'s "use" prong requires contemporaneity is also supported by the <u>Kastner</u> court's discussion of <u>Cung La v. State Farm Automobile Insurance Co.</u>, 830 P.2d 1007, 1008 (Colo. 1992), a case which arose out of a coordinated, multi-car drive-by shooting in which "three vehicles . . . took part in a maneuver

8

that prevented [the victim] from changing the speed or direction of [his vehicle] and enabled the assailant in one vehicle to shoot the [victim]." The Kastner court approvingly noted that in reversing a grant of summary judgment to the insurer, the Cung La court "assumed that the assailants . . . were 'using' their [uninsured] cars as contemplated by the insured's policy since the cars were moving *at the time of the shooting*." Kastner, 77 P.3d at 1265 (emphasis added). Moreover, this interpretation of Kastner's "use" prong is also supported by Justice Bender's dissent in Kastner, wherein he laments that "the majority requires that [the victim's] injuries be *concurrent* with [the] vehicle's use." Id. at 1267 (Bender, J., dissenting) (emphasis added).

There is, however, some support for Ms. Fisher's position as well. Perhaps most significantly, one year before the Colorado Supreme Court issued its decision in Kastner, the Colorado Court of Appeals issued its decision in Cole v. United Services Automobile Ass'n, 68 P.3d 513, 515 (Colo. App. 2002), wherein it held that so long as a claimant can demonstrate that the injury "originated in," "grew out of," or "flowed from," the use of an uninsured vehicle, "the fact that the assailant left the uninsured vehicle before assaulting [the victim] does not sever the casual connection between [the victim's] injuries and the uninsured vehicle." While this is a discussion of causation, Kastner's second prong, this language obviously indicates that the Cole court would reject a bright line rule requiring contemporaneity in connection with Kastner's "use" prong.

9

As this discussion indicates, there is some potential confusion regarding the parameters of Kastner's "use" prong. However, as we will discuss below, we conclude here that Brown's use of the Suburban is not sufficiently linked to the cause of Mr. Fisher's injuries as to satisfy Kastner's second, or "causation" prong. Thus, we need not resolve any potential confusion which relates to Kastner's first prong.

*2.     Causal Connection*

Assuming, without deciding, that Kastner's first prong is satisfied, we must next determine whether Brown's "use" of the Suburban was causally related to Mr. Fisher's death. See Kastner, 77 P.3d at 1263. The requisite causal connection requires "something more than a mere 'but for' relation," but "something less than proximate cause in the tort sense." Id.

In a discussion that is relevant to whether the use of Brown's vehicle was causally related to Mr. Fisher's death, the Kastner court observed that "to complete and satisfy [this] analysis, the claimant must show . . . that no independent significant act or non-use of the vehicle interrupted the 'but for' causal chain between the covered use of the vehicle and the injury," and that "[w]here the injury in question . . . is actually the result of an intentional act of another, this showing can be particularly difficult to make." Id. at 1264. The Kastner court also cautioned, however, that "even [the] criminal act of another will not automatically preclude recovery." Id.

10

It appears clear under Colorado law that if an assailant's injurious conduct is predicated upon his or her presence in a moving vehicle, such as in a so-called "drive by" shooting, the requisite causal nexus is present. See State Farm Mut. Auto. Ins. Co. v. McMillan, 925 P.2d 785, 794 (Colo. 1996); Cung La, 830 P.2d at 1011. If, however, the vehicle in which the assailant is traveling stops and the assailant gets out of the vehicle before attacking his or her victim, the requisite causal connection between the "use" of the vehicle and the attack becomes more difficult to establish.

In Cole, the Colorado Court of Appeals had occasion to address the issue of causation in such a case. There,

> The uninsured vehicle . . . pulled . . . in front of [the victim's] vehicle and stopped suddenly. [The victim's] vehicle stopped to avoid a collision. The driver of the uninsured vehicle then backed his vehicle into the front of [the victim's] vehicle. Both drivers left their vehicles, and an altercation ensued. A passenger in the uninsured vehicle went to [the victim's] vehicle, opened the passenger door, and assaulted [the victim] with his fists and a wine bottle.

Cole, 68 P.3d at 514. The Colorado Court of Appeals held that UM benefits were available because "as in Cung La and McMillan, the uninsured vehicle impeded the progress of [the victim's] vehicle and enabled the passenger of the uninsured vehicle to get out and assault [the victim]," and thus, the uninsured vehicle "was not used merely to transport the assailant to the scene of the assault." Id. at 515.

The facts of the instant case are, however, readily and meaningfully distinguishable from those in Cole. Indeed, as State Farm noted in its response to

11

Ms. Fisher's motion for summary judgment, "Brown [did not use] his motor vehicle to control the movement of Mr. Fisher, or anyone else." Aplt. App., Vol. 2, at 580. Rather, Mr. Fisher's pulling the Explorer over to the side of the road was, at worst, caused by Brown's use of the shotgun, and not his use of the Suburban. And moreover, when Brown turned the Suburban around, he did not position it in a manner which restricted the movement of either the Explorer's passengers, or the Explorer itself. The Suburban was not used by Brown to strike Mr. Fisher, or as an instrumentality in assaulting Mr. Fisher.

Thus, Brown used the Suburban, in essence, as a means to transport himself to the scene of his assault of Mr. Fisher. And, it is clear that such "use" is insufficient to establish the causal nexus required by <u>Kastner</u>'s second prong. <u>See</u> <u>Kastner</u>, 77 P.3d at 1266 ("[U]sing the car to drive the victim to a remote location no more connects the car to the assault than if the assailant had used the car as the mere situs of the assault without moving it."). Accordingly, we conclude that the district court did not err in granting summary judgment to State Farm with respect to Ms. Fisher's entitlement to UM benefits.

<em>DID STATE FARM ACT UNREASONABLY?</em>

Ms. Fisher also appeals the district court's grant of summary judgment to State Farm on the counterclaim which she brought pursuant to Colo. Rev. Stat. § 10-3-1116(1), a statute which permits an insurance claimant "whose claim for payment of benefits has been *unreasonably* delayed or denied [to] bring an action

12

. . . to recover reasonable attorney fees and court costs and two times the covered benefit." (emphasis added). Ms. Fisher contends that if "there exists a genuine issue of material fact as to coverage, such facts when viewed in the light most favorable to [her] create a genuine issue of material fact as to whether State Farm's conduct in delaying and denying [her] claim was unreasonable." Aplt. Br. at 27. Ms. Fisher's position is, however, untenable.

The Colorado Court of Appeals has held that "[i]t is reasonable for an insurer to challenge claims that are *fairly debatable*." Pham v. State Farm Mut. Auto. Ins. Co., 70 P.3d 567, 572 (Colo. App. 2003) (emphasis added). And, as our previous discussion clearly indicates, the parameters of UM coverage in Colorado are "fairly debatable." State Farm's decision to file a declaratory judgment action was, therefore, not unreasonable. Accordingly, we conclude that the district court properly granted summary judgment to State Farm on Ms. Fisher's counterclaim.

### III

The judgment of the district court is AFFIRMED.

13