FILED
United States Court of Appeals
Tenth Circuit

June 20, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

GOVERNMENT EMPLOYEES
INSURANCE COMPANY, a
Maryland corporation,

      Plaintiff - Appellee,

v.

STACEY MOORE, individually and as
mother and next friend of Caleb
Moore; CALEB MOORE,
individually; JEREMY VIALPANDO,
individually,

      Defendants - Appellants,

DAVID L. BROWN; AMANDA L.
BROWN, individuals,

      Defendants.

No. 10-1468
(D.C. No. 09-CV-02666-WDM-BNB)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **BALDOCK**, and **LUCERO**, Circuit Judges.

---

In this declaratory judgment action, Plaintiff-Appellee GEICO successfully

sought a judgment that it did not owe its insured (Defendants David L. and

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Amanda Brown) a duty to defend or indemnify arising from claims on behalf of Defendants-Appellants Caleb Moore and Jeremy Vialpando. Defendants-Appellants argue that a car-to-car shooting is a compensable accident under Colorado insurance law and that a policy exclusion for intentionally causing injury is void as against public policy. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

Background

This case arises out of the unfortunate series of events that we previously examined in State Farm v. Fisher, 618 F.3d 1103 (10th Cir. 2010). Fisher concerned the shooting of Michael Fisher in the street following a car chase. This case concerns the events taking place prior to that shooting. On November 5, 2007, A.J. Brown visited the home of his ex-girlfriend, Tiffany Howard, and demanded to be let in. She refused him entry and called a friend, Jeremy Vialpando, for help. Mr. Vialpando and three friends, Caleb Moore, Robert Ellsworth, and Michael Fisher, drove over to Ms. Howard's home and picked her up. As they were driving away from her home, the group became aware that Mr. Brown was following them in his car. Mr. Brown first struck the rear of their vehicle with his own. He then pulled alongside their vehicle, aimed a shotgun out of his passenger-side window, and fired. The shotgun blast shattered the left-passenger window and hit Mr. Vialpando in the side of the head. Mr. Moore was

injured by flying glass from the same shot.

The 1989 Chevrolet Suburban that Mr. Brown was driving was owned by his parents, David and Amanda Brown. It was covered by a GEICO automobile insurance policy providing that GEICO "will pay damages which an insured becomes legally obligated to pay because of: 1. bodily injury, sustained by a person, and; 2. damage to or destruction of property, arising out of the ownership, maintenance, or use of the owned auto or a non-owned auto. We will defend any suit for damages payable under the terms of this policy." Aplt. App. 4. However, the policy also contains the following exclusion: "Bodily injury or property damage caused intentionally by or at the direction of the insured is not covered." Id. at 5.

GEICO filed this action seeking a declaration that it owed no duty under the terms of the policy to defend or to indemnify the Browns for the claims asserted against them on behalf of Mr. Moore and Mr. Vialpando in state court actions. See Gov't Emps. Ins. Co. v. Brown, 739 F. Supp. 2d 1317, 1320 (D. Colo. 2010). Defendants-Appellants moved for summary judgment contending that GEICO's intentional act exclusion was void as against Colorado public policy. GEICO in turn moved for summary judgment contending the exclusion precludes recovery for the Browns despite Colorado's mandatory insurance laws. The district court granted partial summary judgment in GEICO's favor, concluding that the intentional act exclusion was not void, the intentional act

- 3 -

exclusion applied in the circumstances at hand, and, therefore, GEICO could incur no coverage obligation to defend the Browns, nor, as it follows, to indemnify them. See id. at 1326. The parties do not dispute that the shooting in this case falls within the scope of the exclusion. Therefore we consider only the legal question of its validity. Because we conclude that Colorado law permits the intentional acts exclusion, we affirm.

## Discussion

We review appeals from a district court's grant of summary judgment de novo, affirming if, viewing the facts in the light most favorable to the non-movant, there remains no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Mathews v. Denver Newspaper Agency LLP, --- F.3d ----, 2011 WL 1901341, at *3 (10th Cir. May 17, 2011); see Fed. R. Civ. P. 56(a). In diversity cases, the substantive law of the forum state governs the underlying claims. Therefore we apply Colorado law in examining the district court's grant of summary judgment. See Fisher, 618 F.3d at 1106. In making this inquiry, "we apply the law as set forth by Colorado's highest court. The decisions of lower Colorado courts, while persuasive, are not dispositive." Id. (internal quotation marks and citations omitted).

Colorado recognizes a broad duty to defend, requiring an insurance company to defend where the complaint against the insured "alleges any facts that

might fall within the coverage of the policy, even if allegations only potentially or arguably fall within the policy's coverage." Thompson v. Md. Cas. Co., 84 P.3d 496, 502 (Colo. 2004) (internal quotation marks and citation omitted).  Because the parties do not dispute that the acts in question were intentional and thus expressly excluded by the terms of the policy, we must affirm if the exclusion is valid under Colorado law.  See Hecla Mining Co. v. N.H. Ins. Co., 811 P.2d 1083, 1090 (Colo. 1991) (en banc); Sachs v. Am. Family Mut. Ins. Co., --- P.3d ----, 2010 WL 3259822, at *5 (Colo. App. Aug. 19, 2010).

The Colorado Supreme Court construes automobile insurance contracts as "express attempts to conform to statutory requirements." State Farm Mut. Auto. Ins. Co. v. Kastner, 77 P.3d 1256, 1260 (Colo. 2003) (en banc).  Accordingly, it has held that an exclusion in an automobile policy is void as against public policy if it excludes coverage in a situation for which insurance is mandatory or if it dilutes coverage to such an extent that the practical effect is to render one uninsured in such a situation.  See Meyer v. State Farm Mut. Auto Ins. Co., 689 P.2d 585 (Colo. 1984) (en banc) (exclusion by terms); Farmers Ins. Exch. v. Dotson, 913 P.2d 27 (Colo. 1996) (en banc) (dilution).  Therefore, "[t]he starting point for our analysis begins with the Act." Meyer, 689 P.2d at 588.

Colorado's compulsory automobile insurance laws provide in relevant part, "Every owner of a motor vehicle who operates the motor vehicle on the public highways of this state . . . shall have in full force and effect a complying policy

- 5 -

under the terms of this part 6 covering the said motor vehicle . . . ." Colo. Rev. Stat. § 10-4-619. They also provide that "the basic coverage required for compliance with this part 6 is legal liability coverage for bodily injury or death arising out of the use of the motor vehicle." Id. § 10-4-620.

Exclusions to compulsory coverage are permitted "where the injured person: (a) Sustains injury caused by his or her own intentional act; or (b) Is operating a motor vehicle as a converter without a good faith belief that he or she is legally entitled to operate or use such a vehicle." Id. § 10-4-623(2). There may also be other, valid, exclusions beyond those expressly stated in Colo. Rev. Stat. § 10-4-623(2) provided they "are not inconsistent with the requirements of this part 6." Colo. Rev. Stat. § 10-4-623(1).

Defendants argue that Meyer v. State Farm sets out the relevant framework to examine whether an automobile insurance policy exclusion not expressly provided for by statute is void as against Colorado public policy. See 689 P.2d 585 (Colo. 1984), superceded by Colo. Rev. Stat. § 10-4-418(2)(b), as recognized in Schlessinger v. Schlessinger, 796 P.2d 1385, 1389 (Colo. 1990). Meyer invalidated a household exclusion on the grounds that it was not expressly authorized by the predecessor to Colo. Rev. Stat. § 10-4-623 and that it conflicted with the broader Automobile Reparations Act ("No Fault Act"). 689 P.2d at 592. Meyer's analysis largely was informed by the stated legislative purpose of the No Fault Act, which was repealed effective July 1, 2003. See Colo. Rev. Stat.

- 6 -

§ 10-4-726, amended by 2001 Colo. Sess. Laws, Ch. 165 § 6 and 2002 Colo. Sess. Laws, Ch. 189 § 1; Meyer, 689 P.2d at 588 (quoting Colo. Rev. Stat. § 10-4-702 (1973)).

According to Defendants, Meyer compels the following premise and deduction: If the intentional acts exclusion renders the driver uninsured in case of bodily injury or death arising out of the use of the motor vehicle, see Colo. Rev. Stat. § 10-4-620, then this exclusion, because not expressly permitted under Colo. Rev. Stat. § 10-4-623, violates public policy and is void. Under Colorado law the injuries in a car-to-car shooting arise out of the use of the motor vehicle. Therefore, the exclusion in this case applies to a situation in which coverage is mandated and is void.

The district court's conclusion was based on the presumption that an intentional shooting is not an "accident" under the terms of an automobile insurance policy:

> I conclude that the intentional conduct exclusion does not conflict with the statute, which sets forth mandatory minimum coverage for bodily injury and property damage caused by an accident involving a motor vehicle. Our legal system is replete with the distinctions between intentional and unintentional, that is, negligent or accidental, conduct. Just as manslaughter is not equated with murder, conduct that intentionally causes such bodily injury cannot fairly be considered a negligent act or an accident. Nothing in the statute indicates that the general assembly concluded that Colorado policy mandated coverage of injuries caused by such intentional conduct.

Brown, 739 F. Supp. 2d at 1323.

We conclude that enforcing the intentional acts exclusion in this case is not contrary to the requirement that persons obtain "legal liability coverage for bodily injury or death arising out of the use of the motor vehicle" because Mr. Brown's actions in this case did not arise out of the use of a motor vehicle; therefore we need not consider the question of whether an intentional shooting may be deemed an "accident" for the purpose of determining the extent of mandatory liability coverage under Colorado law.

The Colorado Supreme Court has not definitively indicated that <u>Meyer</u> is the appropriate framework for our analysis, and GEICO argues that <u>Meyer</u> and its progeny should be distinguished from this case because they concerned policy exclusions narrowing the class of persons covered by a policy. <u>See</u> Colo. Rev. Stat. § 10-4-601(5) (defining "insured" as "the named insured, relatives of the named insured who reside in the same household as the named insured, and any persons using the described motor vehicle with the permission of the named insured"); <u>see, e.g.</u>, <u>Meyer</u>, 689 P.2d at 588; <u>Farmers Ins. Exch. v. Dotson</u>, 913 P.2d 27, 30 (Colo. 1996); <u>St. Paul Fire & Marine Ins. Co. v. Mid-Century Ins. Co.</u>, 18 P.3d 854, 855 (Colo. App. 2001); <u>see also</u> <u>Pacheco v. Shelter Mut. Ins. Co.</u>, 583 F.3d 735, 738 (10th Cir. 2009). However, the portions of the No-Fault Act upon which the court relied in <u>Meyer</u> to determine that the exclusion conflicted with the coverage laws were incorporated into Colorado's mandatory insurance laws. <u>See</u> <u>Meyer</u>, 689 P.2d at 589. <u>Compare</u> Colo. Rev. Stat. § 10-4-

620 (minimum liability coverage), and id. § 10-4-623 (exclusions), with Colo. Rev. Stat. § 10-4-705(1) (minimum liability coverage, repealed), and id. § 10-4-712 (exclusions, repealed). Therefore, we conclude that Meyer provides the appropriate framework under Colorado law to examine the validity of the intentional acts exclusion. Even applying this framework, however, we conclude that the injuries incurred from the car-to-car shooting in this case did not "arise out of the use of the motor vehicle," and, therefore, the intentional acts exclusion does not conflict with Colorado's mandatory insurance laws and is not void under Meyer. This conclusion is consistent with Colorado public policy, which, as explained below, recognizes an interest in allowing insurers to shift risk based on an insured's misconduct and in limiting insurance coverage to "calculable risks."

In Meyer, the Colorado Supreme Court examined the validity of a household exclusion clause. To determine whether the exclusion was consistent with Colorado public policy, the court looked to both the language and the legislative purpose of the No Fault Act. Meyer, 689 P.2d at 588 ("The starting point for our analysis begins with the Act. In order to determine whether the household exclusion is inconsistent with the Act, we first look to the underlying public policy expressed by the General Assembly."). The court first looked to the legislative declaration to determine that the legislative purpose behind the No Fault Act was "[t]o avoid inadequate compensation to victims of automobile accidents, and to require that motor vehicle owners purchase insurance policies

- 9 -

which provide coverage for <u>both</u> liability and no-fault benefits." <u>Id.</u> The court then looked to the language of the statute to determine whether liability coverage was required by the act and, if so, whether the household exclusion clause was within the act's permitted exclusions. <u>Id.</u> at 588-89. It determined that the exclusion rendered the party uninsured in a situation for which the act required coverage and that the exclusion was not permitted by the statute. Therefore, the court held, the exclusion was invalid because it was "neither authorized by statute nor in harmony with the legislative purpose mandating liability insurance to provide coverage for bodily injury and property damages to avoid inadequate compensation to victims of automobile accidents." <u>Id.</u> at 592.

Accordingly, under <u>Meyer</u>'s framework, we must first examine whether the intentional acts exclusion renders Mr. Brown uninsured "for bodily injury or death arising out of the use of the motor vehicle." Colo. Rev. Stat. § 10-4-620. We conclude it does not. The Colorado Supreme Court engages in a two-part test to determine whether injuries "aris[e] out of the use of the motor vehicle," which, when applied, operates to exclude intentional acts that are not inexorably intertwined with the use of the subject vehicle: (1) the vehicle must be used in a manner "foreseeably indentifiable with the inherent purpose of a motor vehicle," <u>Kastner</u>, 77 P.3d at 1263; and (2) there must be a "causal connection" between the use of the automobile and the injury, <u>id.</u>

To date, the Colorado Supreme Court has considered the issue of whether

- 10 -

in cases of shootings involving automobiles a sufficient causal nexus is present to compel coverage under state-mandated insurance only in the context of uninsured motorist coverage.  These cases are relevant because uninsured motorist coverage must be offered to a class coextensive with the class covered under a policy's liability provision.  See Pacheco, 583 F.3d at 739.  However, it remains an open question under Colorado law whether the circumstances here present an adequate causal nexus to conclude that the injuries arise out of the use of the automobile such that coverage would be required under the policy.

In Cung La v. State Farm, the plaintiff was driving along the highway when three other cars, whose drivers recognized him from a prior incident, boxed him in.  One of the drivers then fired a shot into the plaintiff's vehicle, injuring him.  The Colorado Supreme Court sitting en banc concluded that under these circumstances the plaintiff raised an issue of fact as to whether the shooting involved the use of the vehicle and whether that use caused the injuries.  Cung La v. State Farm Auto. Ins. Co., 830 P.2d 1007, 1011 (Colo. 1992) (en banc).  The court instructed that the causation query should be whether the "vehicle contributed to the injuries and the injuries would not have been sustained but for the assailant's use of the uninsured vehicle."  Id. at 1009.  Determinative in Cung La was whether "the assailant identified and shot [the victim] because of the vehicle he was driving and would not have shot him but for his driving of the vehicle."  Id. at 1012 (emphasis added).  "If . . . the assailant identified and shot

- 11 -

him because of the vehicle he was driving and would not have shot him but for his driving the vehicle," then, the court concluded "the injuries he sustained from the gunshot were causally related to his use of the vehicle."  Id.

State Farm v. McMillan, 925 P.2d 785 (Colo. 1996) (en banc), would appear to bolster the conclusion that injuries from car-to-car shootings are caused by the use of a motor vehicle; however, its import is somewhat limited.  The parties in McMillan stipulated that the decision in Cung La, then in the Colorado Court of Appeals, would control the outcome of the insurer's summary judgment motion in their case.  See McMillan, 925 P.2d at 788.  In McMillan, the insured had a verbal exchange with another driver who had been tailgating her while they were stopped at a traffic light, and the second driver then followed her and fired several shots into her car, injuring her.  Once the Colorado Court of Appeals entered summary judgment in favor of the insurer in Cung La, the McMillan court granted summary judgment to the insurer as well.  Id.  But, when the Colorado Supreme Court reversed the decision of the Court of Appeals in Cung La, the insured in McMillan filed a motion for relief from the judgment, which was granted.  Id. at 789.  The insurer amended its complaint to add the claim that the insured's injuries did not arise out of an "accident," which argument was ultimately rejected by the Colorado Supreme Court.  McMillan, 925 P.2d at 795.  But the issue of whether the injuries arose from an "accident" is distinct from that of causal connection to the use of the automobile.  And in any event it is not clear

that Colorado would extend its rationale regarding whether an intentional act is an accident where the act is committed by the insured; <u>McMillan</u> concerned uninsured motorist coverage, which does not pose the same moral hazard risk as covering the intentional acts of an insured. The court's recent decision in <u>Bailey v. Lincoln Gen. Ins. Co.</u>, --- P.3d ----, 2011 WL 2150759 (Colo. May 16, 2011), discussed below, suggests the court would not.

In <u>State Farm v. Fisher</u>, 618 F.3d 1103, we addressed whether a sufficient causal nexus was present between the operation of a motor vehicle and a shooting in the street such that an insured could recover pursuant to uninsured motorist coverage. <u>Fisher</u> concerned Mr. Brown's shooting of Michael Fisher in the street after both had exited the vehicles. After seeking recovery from GEICO, which was declined based on the subject intentional acts exclusion, Mr. Fisher's mother then filed an uninsured motorist claim with her own insurer, State Farm. <u>Id.</u> at 1105. Applying Colorado law, we assumed without deciding that the use prong was satisfied, <u>id.</u> at 1108, and reasoned that "[i]t appears clear under Colorado law that if an assailant's injurious conduct is predicated upon his or her presence in a moving vehicle, such as in a so-called 'drive by' shooting, the requisite causal nexus is present." <u>Id.</u> at 1108 (citing <u>McMillan</u>, 925 P.2d at 794; <u>Cung La</u>, 830 P.2d at 1011). Mr. Brown, however, had stopped his vehicle and exited before shooting Mr. Fisher and had not used his vehicle as an instrumentality of the assault; therefore, we concluded, "[Mr.] Brown used the Suburban, in essence,

as a means to transport himself to the scene of his assault of Mr. Fisher.  And, it is clear that such 'use' is insufficient to establish the causal nexus required by Kastner's second prong."  Id. at 1109 (citing Kastner, 77 P.3d at 1266).

Here we conclude that, as in Fisher, Mr. Brown's action was not predicated upon his presence in a moving vehicle.  We recognize that there may be instances–as in some cases of "drive-by" shootings and "road rage"–in which a sufficient nexus between the use of the vehicle and the injuries is present such that they must be deemed to arise out of the use of the vehicle under Colorado law and exclusion of which may therefore contravene Colorado mandatory insurance laws.  However, in these circumstances, the shooting was independent of both Mr. Brown's use and Mr. Vialpando's use of the motor vehicles.  Although Mr. Brown and the victims remained in the vehicles, as in Fisher Mr. Brown's vehicle was merely "a means to transport himself to the scene of his assault."  Mr. Brown saw Mr. Moore and Mr. Vialpando enter their vehicle, followed them, then commissioned the intentional act.   There is no allegation that the injuries were caused by Mr. Brown's use of his vehicle as an instrumentality or that Mr. Brown identified and shot at the victims based on the vehicle they drove.  See Cung La, 830 P.2d at 1012.

Even assuming that the shooting in this instance bore sufficient causal nexus to implicate Cung La, the Colorado Supreme Court has articulated a strong public policy against the coverage of intentional acts by an insured, which

- 14 -

compels us to conclude that the exclusion in this case would be upheld.  In <u>Bailey</u>

<u>v. Lincoln General Insurance Co.</u>, the court considered the question whether the

policy of fair compensation for innocent victims should override a crime

exclusion in the context of supplemental insurance coverage.  <u>See</u> 2011 WL

2150759.  Because <u>Bailey</u> concerned supplemental coverage, the court did not

construe the provisions that pertain here.  <u>See</u> <u>id.</u> at *5.  But in considering the

validity of the crime exclusion the court stated, "There are multiple, competing

public-policy principles animating Colorado's insurance laws: not only is it the

public policy of this state to protect tort victims, but it is also the public policy of

this state to provide insurers and insureds the freedom to contract, allowing

insurers to shift risk based on their insureds' misconduct, especially when that

misconduct significantly increases the risk of insurers' liability and may be

encouraged by indemnification."  <u>Id.</u> at *6.  Moreover, "public policy is also

concerned with insurers giving insureds license to engage in intentional

misconduct, which, may be 'more likely if . . . insured[s] believe [they] will not

have to bear the financial costs of the intentional conduct.'"  <u>Id.</u> at *7 (quoting 7

Couch on Insurance § 101-21 (2006) (alterations in original)).

The court recognized that "intentional-act exclusions 'are necessary to help

insurers set rates and supply coverage.  If a single insured is allowed, through an

intentional act, to consciously control risks covered by the policy, the central

concept of insurance is violated.'"  <u>Id.</u> at *6 (quoting <u>State Farm Fire & Cas. Co.</u>

- 15 -

v. Leverton, 732 N.E.2d 1094, 1097 (Ill. App. Ct. 2000)) (citing Charter Oak Fire Ins. Co. v. Color Converting Indus. Co., 45 F.3d 1170, 1174 (7th Cir. 1995)). This statement of Colorado public policy is consistent with the prior statement in American Family Mutual Insurance Co. v. Johnson, 816 P.2d 952 (Colo. 1991), that "[t]he purpose of the exclusion of intentional injuries from coverage is to prevent extending to the insured a license to commit harmful, wanton or malicious acts. This purpose serves a valid public policy." Id. at 957 (citations omitted).

In sum, we must conclude that enforcing the intentional acts exclusion in this case is not contrary to the requirement that persons obtain "legal liability coverage for bodily injury or death arising out of the use of the motor vehicle" and that the exclusion is consistent with Colorado public policy limiting insurance coverage to calculable risks.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge